In the Matter of the Judicial Settlement of the Account of JOHN J. FENELON, as Administrator, etc., of BESSIE FENELON, Deceased, Respondent.

ELIZABETH YAUCH, Appellant.*

Third Department, December 30, 1932.

---

* Affd., 262 N. Y. 57.

*Harry W. Williams*, for the appellant.

*Charles E. Brennan*, for the respondent.

HINMAN, J. Claimant appeals from a part of the Albany surrogate's decree upon settlement of the account of the administrator of the estate of Bessie Fenelon, deceased, which decided that a deposit of $1,599.14 in the Albany Savings Bank in the names of decedent and claimant was the property of the estate rather than of claimant.

Bessie Fenelon in her lifetime became the owner of a joint account in that bank as survivor of her sister. On February 20, 1931, Bessie Fenelon and Elizabeth Yauch went to the bank. Bessie Fenelon signed an order transferring the Bessie Fenelon account to " Bessie Fenelon and Elizabeth Yauch." No words of survivorship were added. The bank clerk had both of them sign their names on a signature card and on a page of the signature book. The clerk made out a credit slip in the same names of " Bessie Fenelon and Elizabeth Yauch," no words of survivorship being added to such slip. After the signature card and the page from the signature book had been signed by the two women, and in their presence, and as the documents were lying before them, the clerk stamped on both the signature card and the page from the signature book the following: " A joint account with right of survivorship, payable to either of the undersigned depositors or to the survivor, is hereby created and this bank notified accordingly." This is in fine print and hard to read. If anything was said at the time, the clerk had no recollection of it. No such stamp as to joint account and survivorship was put on the order signed by Bessie Fenelon, transferring her old account to the new one and no such stamp was put on the credit slip. The credit slip was given to another bank clerk who made out the pass book, and he made out the pass book to conform exactly with the credit slip, as follows: " Albany Savings Bank, in acc't with Bessie Fenelon and Mrs. Elizabeth Yauch." No words as to joint account and survivorship were stamped on the pass book, which was handed to Bessie Fenelon and who later used it several times to withdraw or deposit or to have interest written up. The pass book remained in the possession and control of Bessie Fenelon until her death. She died on May 3, 1931.

Subdivision 3 of section 249 of the Banking Law provides as follows: " *When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or*

*the survivor of them,* such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, * * *. *The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence,* in any action or proceeding to which either such savings bank or the surviving depositor is a party, *of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."*

If the form of the deposit as indicated on the bank records alone furnishes conclusive presumption, then arbitrarily, for no public purpose, without compensation and by no due process of law, an owner may be made to lose her property without her consent, and without her knowledge, because her pass book, the only record of the agreement placed in her hands or known to her, is not in form to comply with the statute. There is no proof that she selected the words used in the bank records or knew of them. It may be that she saw the clerk stamp something upon these bank records, but it may not be fairly inferred that she knew what words were stamped thereon. They were in fine print and the exhibits show that the stamping was not clear. The clerk has no recollection of any conversation that took place, Bessie Fenelon is dead and the claimant cannot testify. So we do not know whether Bessie Fenelon had knowledge of the form of these bank records and consented to a deposit in that form. If the statute is to be interpreted to create a conclusive presumption based on these records of the bank alone, the statute so construed is not valid. (*Matter of Buchanan,* 184 App. Div. 237, 240.) Section 249 of the Banking Law does not indicate what shall evidence the making of the deposit. It simply states in subdivision 3: " When a deposit shall be made," etc. For the benefit of itself and the depositors, the bank has, however, provided a by-law authorized by law to be made, which " shall be evidence between such savings bank and the depositors holding the same [pass books], of the terms upon which the deposits therein acknowledged are made." (Banking Law, § 248, subd. 1.) Pursuant to such authority, the Albany Savings Bank provided in by-law VIII, printed in each pass book, as follows: " The acceptance of the passbook by the person making the deposit shall constitute an agreement, and the only agreement, between the bank and the depositor, to be observed, kept, fulfilled and enforced subject to the By-Laws, Rules and Regulations of the Bank as they then exist or may thereafter be lawfully altered or amended. No special

agreement with any depositor not written in the passbook and signed by the President or the Treasurer shall be binding on the bank." Thus the bank had authority to make the pass book the evidence of the " terms upon which the deposits therein acknowledged are made," and it has done so by making " the acceptance of the passbook * * * the only agreement between the bank and the depositor." Reading the provisions of sections 248 and 249 of the Banking Law together, the conclusion is inescapable that the pass book and not the records of the bank must be relied upon to evidence the conclusive presumption relied upon by the claimant under section 249. Since the pass book in question was not in form to create the statutory presumption, that section of the Banking Law is not available.

The statutory provision is in derogation of the common law and must be strictly construed and to come within the statute " the form of the deposit must be in strict conformity with that expressed by the statute, or the statute will not apply." (*Matter of Fonda*, 206 App. Div. 61, 63.) There was no valid gift to claimant under common-law principles. There was no delivery of the pass book to claimant. It was retained in the possession of Bessie Fenelon. The deposit in the joint names raised no presumption of the existence of an intent to give. That might have been simply for purposes of convenience. (*Hayes* v. *Claessens*, 189 App. Div. 449; *Matter of Bolin*, 136 N. Y. 177.) The law never presumes a gift. (Id.) Joint deposits not in the form provided by section 249 of the Banking Law are still presumed to have been made for convenience only and in the absence of proof rebutting that presumption no title or ownership vests in the survivor. (*McDonald* v. *Sargent*, 121 Misc. 437, 443.)

Bessie Fenelon did not direct the money to be deposited according to the form of the statute but only in joint account, which must be presumed to have been made only for convenience. She had a safe deposit box in another bank and she made claimant her agent to have access to the box and gave her a key to it. There is also a letter in evidence signed by Bessie Fenelon and addressed to claimant which was found in the box. It gave directions to claimant as to disposing of various items of property, which stated " the book with your name on it is for you." The pass book in question was in the box and was the only one with claimant's name on it. There is also testimony of the manager of the safe deposit department of the bank that prior to her death the deceased had said to him that the pass book she was putting in the box was a joint account which she had with the claimant, who was to get the money when she died. These facts do not seem to me to show what her

original intent was at the time she made the deposit. She may have relied upon the letter as a testamentary document rather than upon the form of the deposit. Both the letter and her remarks to the safe deposit manager speak as of her death and not as of the time of the deposit. Neither can be given testamentary effect.

For all these reasons I believe the decree of the Surrogate's Court must be affirmed, with costs to respondent payable out of the estate.

VAN KIRK, P. J., RHODES and CRAPSER, JJ., concur; HILL, J., dissents, with a memorandum.

HILL, J. (dissenting). At the beginning of the transaction the money was in an account in the bank in the name of the deceased. She withdrew it by signing a check payable jointly to herself and the claimant. The deposit slip or card signed by these two persons to whom the check was payable recited that the deposit was a joint account with right of survivorship, as did the signature book. Each act of deceased indicated an intent to make a joint account with the right of survivorship in the claimant. The failure of the bank scriveners to indicate this intent on the account books of the bank should not defeat the obvious intention of deceased. The oral testimony supports this theory.

Decree affirmed, with costs to the respondent payable out of the estate.