In the Matter of the Accounting of JOHN J. FENELON, as Administrator of the Estate of BESSIE FENELON, Deceased, Respondent.

ELIZABETH YAUCH, Appellant.

(Reargued June 8, 1933; decided July 11, 1933.)

(See 262 N. Y. 57, 539.)

*Harry W. Williams* for appellant.

*Charles E. Brennan* for respondent.

KELLOGG, J.   On the reargument of this case there was shown to us, for the first time, the original ledger of the Albany Savings Bank, an exhibit in the case, upon which its patrons placed their signatures when signing up as depositors.   In respect to the two depositors,

Bessie Fenelon and Elizabeth Yauch, the page of the book exhibiting their signatures showed that the black ink with which they wrote their names, wherever the lines of the two impressions crossed, overlaid the red ink with which the statutory words, declaring the account to be a joint account, had been stamped. This was apparent to the naked eye and was conceded by the respondent, so that, notwithstanding the testimony of the bank clerk to the contrary, upon which we relied in writing our previous opinion (262 N. Y. 57), it must be taken as the very truth that the legend was present when the women signed beneath. It cannot be gainsaid, therefore, that the two women entered into the relationship of depositors with the bank by authorizing the bank to credit the moneys deposited to a joint account in the statutory form. The bank made entries accordingly, recording the initial and subsequent deposits on a ledger card, which displayed as a heading the words " Bessie Fenelon and Mrs. Elizabeth Yauch, Joint Account with right of survivorship, payable to either depositor or to survivor." On the other hand, the pass book, simultaneously delivered to one of the depositors, was headed "Albany Savings Bank in acc't with Bessie Fenelon and Mrs. Elizabeth Yauch," no words stating that the account was joint being added. The question, to which our attention is now definitely called, is whether the words of the ledger card, or the words of the pass book are controlling.

On the signature book, above the names of the two depositors, in addition to the statement that the account is joint, there is the following: " I hereby assent to the By-Laws, Rules and Regulations of the Albany Savings Bank, as set forth in Pass book of said institution furnished me, and agree to be bound thereby." By-law VIII provides that the "Acceptance of the pass book by the person making the deposit shall constitute an agreement, and the only agreement, between the bank

and the depositor, to be observed, kept, fulfilled and enforced subject to the By-laws, Rules and Regulations of the Bank as they then exist or may be thereafter lawfully altered or amended." It is thus stipulated that the printed words of the by-laws and rules, as they appear in the pass book, are a part of the contract, as well as the words handwritten, or typewritten, therein, and that where the two conflict the latter must give way to the former. It is not at all clear that words recording the deposit, as typewritten in the pass book are not in conflict with the terms of rule 3 of the rules and regulations of the bank. That rule in part provides as follows: " No employee of the bank other than the president or the treasurer, shall make any agreement, oral or written, involving the bank, beyond the ordinary entries made in the pass books of depositors inclusive of entries creating joint accounts and trust accounts." The " ordinary entries " made in pass books are clearly words crediting deposits to the accounts of individuals. It would seem, therefore, that bank officials, other than the president and treasurer, would have power to make no other entries than those crediting moneys to individual accounts, " joint accounts " or " trust accounts." Two alternative conclusions would seem to follow. Either the credit made to the account of " Bessie Fenelon and Mrs. Elizabeth Yauch," as those words appear without more in the pass book, construed in the light of rule 3, constitute a credit to joint account, as they would not at common law when employed in the setting of ordinary circumstance; or the terms of the pass book, since not expressly approved by the president or treasurer, set up a form of deposit not authorized under rule 3, and have no effect either as constituting a contract or as evidence thereof.

The question is, however, not what was the precise agreement between the depositors and the bank, but what were the terms of the deposit as made. The statute says that the presumption applies when " a deposit shall

be made " in the statutory form, payable " to either or the survivor " of two depositors; that the " making of the deposit in such form " shall, in certain cases, such as this, " be conclusive evidence " that the depositors intended to vest title in the survivor. (Banking Law; Cons. Laws, ch. 2, § 249.) It is not the pass book which governs, for that word is not used in the statute. It is the " making " of the deposit in statutory form which controls. How, then, is that accomplished? We think the deposit is made when the initial deposit moneys are paid over, with instructions to credit the same in a certain form and the deposit is accepted and credited as directed. Rule 3 of the bank in part provides: " On making the first deposit every depositor, if he or she is able to write, shall be required to enter his or her name on the signature card or book provided for that purpose." This, Bessie Fenelon, the initial depositor, did, signing her name, as did Elizabeth Yauch, made by her a fellow depositor, as it now appears, under the legend " A joint account with right of survivorship, payable to either of the undersigned depositors, or the survivor, is hereby created and the bank notified accordingly." The moneys were then turned over to the bank and credited on the ledger card to joint account. This completed the " making " of the deposit, and that deposit was in statutory form, as authorized by the depositors. The bank pass book, subsequently delivered, did not constitute the " making " of the deposit; it was no more than evidence, if even that, of a deposit previously made·

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, and judgment directed in favor of the appellant, with costs in all courts.

CRANE, LEHMAN, O'BRIEN and CROUCH, JJ., concur; POUND, Ch. J., not voting; HUBBS, J., not sitting.

Ordered accordingly.