Lott H. Wells, S.
The question of ownership of Canton Savings and Loan Association Account No. 14933 for $2,669.67, existing on the date of death in the names of the decedent and his sister, is presented on this accounting. The initial deposit was made on May 21,1952, and the title of the account remained unchanged from the opening date to the time of death. William B. O’Connell, committee of the person and property of Harriette M. Olin, sister, claims title to the account as surviving joint tenant, while the administrator, who is a brother of decedent, claims the account as an estate asset.
Mark E. Olin died intestate February 19, 1956. He made the initial deposit as well as all subsequent deposits, and had exclusive possession of the passbook during his lifetime. Neither party was married. There is no evidence that a signature card was signed for this account. The passbook was issued in the names of Mark or Harriette Olin. The ledger record kept by the bank consists of ledger cards about 6 by 8 inches. The ledger card for Account No. 14933 was issued in the names of Mark or Harriette Olin. It has a printed form at bottom of front side for signatures of persons signing up as depositors. It is not signed. Neither the passbook nor the ledger card exhibited words, stamped or written, to indicate that the account was a joint account payable to either or survivor. The secretary of the bank testified, it is their practice under their rules and regulations, although not expressly provided in the by-laws, when the initial deposit is made, to require each depositor to sign a signature card as evidence of the precise agreement between the depositors and the bank. Only one form of signature card is used. One side has a printed form for joint account, to be withdrawn “ by either before or after the death of either ”, the other side has a printed form for a single name account. Depositors are not required to sign the ledger card, and stamped or written words are not added to the ledger card or the passbook to indicate the form of the account based on the instructions of the signature card, except the word “ or ” is added to the ledger card and passbook between the names of the depositors of accounts made in dual names. The signature card constitutes their only evidence of the depositors’ intention.
The evidence produced by the committee in support of his contention is based primarily upon the similarity, except as to *57 signature card, to Aecount No. 14965 in the Canton Savings & Loan Association, in the names of Harriette M. Olin or Mark Olin, to show that Mark knowingly and consciously created and sanctioned the alleged joint account. Harriette M. Olin made the initial deposit on June 25,1952 and with her brother, signed signature card No. 14965 under date of June 26, 1952 in names of Harriette M. Olin or Mark Olin. The passbook was issued in the names of Harriette M. Olin or Mark Olin. The ledger card for Account No. 14965 was issued in the names of Harriette
M. Olin or Mark Olin. It was not signed. Neither the passbook nor the ledger card exhibited words, stamped or written, to indicate that the account was a joint account payable to either or survivor. Harriette M. Olin entered St. Lawrence State Hospital, Ogdensburg, N. Y. on October 26,1953. On March 4, 1955, William B. O’Connell was appointed committee of her person and property. On June 17,1955, the committee, with the consent of Mark, withdrew the balance of $1,316.66 in Account No. 14965.
From December 15, 1953 through December 6, 1955, Mark made nine deposits in Account No. 14933, which increased it by $1,180. Two deposits were made after June 17, 1955.
The record made of Account No. 14933, the passbook and the ledger card, in the names of Mark or Harriette Olin only, is not in the form to be paid to either or the survivor of them, as provided in subdivision 3 of section 239 of the Banking Law of the State of New York, which provides that “ When a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them ” such deposit “ shall become the property of such persons as joint tenants ” and “ may be paid to either during the lifetime of both or to the survivor after the death of one of them”. It further provides: “ The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either the savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor.” (Matter of Orrico, 52 N. Y. S. 2d 818.)
The statutory provision is in derogation of the common law and must be strictly construed, and to come within the statute the form of the deposit must be in strict conformity with that expressed by the statute, or the statute will not apply. (Matter of Fenelon, 237 App. Div. 285.)
The question is, what were the terms of the deposit as made? “ The statute says that the presumption applies when £ a deposit *58 shall be made ’ in the statutory form, payable 1 to either or the survivor ’ of two depositors; that the ‘ making of the deposit in such form ’ shall * * * ‘ be conclusive evidence ’ that the depositors intended to vest title in the survivor. * * * It is not the pass book which governs, for that word is not used in the statute. It is the ‘ making ’ of the deposit in statutory form which controls. How, then, is that accomplished? We think the deposit is made when the initial deposit moneys are paid over, with instructions to credit the same in a certain form and the deposit is accepted and credited as directed.” (Matter of Fenelon, 262 N. Y. 308, 310-311.)
In Account No. 14965, the signature card did set forth, above the signatures of both depositors, the instructions referred to in Matter of Fenelon (supra, p. 311; see, also, Matter of Golden, 129 N. Y. S. 2d 855) as follows:
No. 14965 Date: June 26, 1952
Names: Harriette M. Olin or Mark Olin
We hereby subscribe for installment, Savings,
Income Shares in the
CANTON SAVINGS AND LOAN ASSOCIATION subject to the by-laws, rules and regulations of the Association as they now exist or may hereafter be amended.
It is understood and agreed that the shares hereby subscribed for are issued by the Association, and all moneys paid or that may hereafter be paid thereon are paid by the undersigned, and are held by said Association for our joint account, and that said shares may be withdrawn, subject to the by-laws of the Association, by either before or after the death of either, and either is authorized to pledge the same as collateral security to a loan.
(1) Signature: Harriette M. Olin
St. and No.: % Olin’s Garage City and State: Canton
(2) Signature: Mark E. Olin
St. and No.: 3 E. Main City and State: Canton, N. Y.
Use this side for joint account.
Although the signature card is dated June 26, 1952, and the account appears to have been opened on June 25, 1952, this deposit was made in the statutory form when Harriette M. Olin, the initial depositor, signed her name, as did Mark Olin, to signature card No. 14965, under the legend, “It is understood and agreed that the * * * moneys * * * may be withdrawn * * * by either before or after the death of either”. This completed the “making” of the deposit. The bank passbook and ledger card did not constitute the “ making ” of the deposit in this case — they were no more than evidence of the deposit previously made. (Matter of Fenelon, 262 N. Y. 308, supra.)
*59 Under subdivision 3 of section 239 of the Banking Law, the executed intention (the signature card in Account No. 14965) to make a deposit “ in form to be paid to either or the survivor ’ ’ sufficiently evinced a purpose that the proceeds of such account should belong to the survivor after the death of the other. (Matter of Fenelon, 262 N. Y. 57; 262 N. Y. 308, supra; Moskowitz v. Marrow, 251 N. Y. 380.) It was enacted to provide a rule of certainty for banks and depositors alike (Moskowitz v. Marrow, pp. 387-388).
This distinguishes it from Account No. 14933, where there is no executed intention to make a deposit in form to be paid to either or survivor. The bank passbook and ledger card constitute the only evidence of 11 making ’ ’ of the deposit, and of instructions to credit the same in a certain form. “ That the moneys were deposited to the account of [Mark or Harriette Olin] is not a fact from which any inference of a transfer, or of a gift, arises. In the absence of other evidence, the transaction simply evidenced a purpose of the depositor of the moneys that they should be drawn out by either of the persons named. The only presumption would be that the depositor so arranged for the purposes of convenience ”. (Matter of Bolin, 136 N. Y. 177, 179.) This presumption is rather strengthened by the fact that Mark continued to make deposits in this account after his sister Harriette became incompetent, and after the Account No. 14965 was withdrawn.
The evidence shows that Account No. 14933 is not in the form described by subdivision 3 of section 239 of the Banking Law to vest title in the survivor to the moneys in the account at the time of death. The burden was upon the committee of the survivor to establish the inténtion of the decedent by additional evidence. This has not been sustained. (Matter of Creekmore, 1 N Y 2d 284, 290.) From these facts, a conclusion cannot be drawn that Mark Olin directed that the moneys be deposited in a joint account payable to either or survivor. (Matter of Fenelon, 262 N. Y. 57, 60, supra.) The conclusion must, therefore, be that Account No. 14933 standing in the names of Mark or Harriette Olin, in the Canton Savings and Loan Association, is presumed to have been arranged for the purposes of convenience, and this court finds it is a part of the estate of Mark Olin and may be withdrawn by the administrator.
Proceed accordingly.