Samuel Rabin, J.
This is an action to determine who, as between the plaintiff and the Public Administrator of the County of Queens, is entitled to the proceeds of a savings hank account in the name of Alma S. Linder, deceased.
Following the service of the summons and complaint, the defendant, the depository of the account involved, interpleaded the Public Administrator of Queens County to whom letters of administration of the goods, chattels and credits of said Alma S. Linder, deceased, were duly issued on May 21, 1959. The answer of said interpleaded defendant denied the material allegations of plaintiff’s complaint and set forth a counterclaim for the proceeds of the account totaling $5,473.24.
From the evidence adduced at the trial, it appears that on January 29, 1938 Alma S. Linder opened the account in question in her name but in trust for her husband, Axel B. Linder. Mr. Linder died on January 18, 1958. The Linders had a son, Bernhard, who was married to Jean Linder, the plaintiff in this section. Bernhard Linder died in May, 1955 without issue, but the good relationship between the plaintiff and her mother-in-law continued. Indeed, plaintiff’s mother was likewise on extremely friendly terms with the Linders and both she and the plaintiff were the only ones who cared for Alma S. Linder after her husband passed away.
The proof shows and the court finds that on November 6, 1958 Alma S. Linder requested plaintiff’s mother, Blanche Bracken, to obtain from the defendant the necessary forms to give the plaintiff the hank account in question since she [Mrs. Linder] was “an old lady”. Mrs. Bracken immediately *841 obtained from the defendant two cards to be used to create a Totten Trust. She brought these cards to Alma S. Linder who called the plaintiff to fill them out. The plaintiff did so on or about November 6, 1958, in the presence of her mother and Alma S. Linder who thereupon signed each of the cards and delivered them to the plaintiff together with passbook No. 22,018 (plaintiff’s exhibit 3) and said: “ Jean, you take care of this.” Some three weeks later, and on or about November 23, 1958, Alma S. Linder passed away. Unfortunately, plaintiff had delayed in delivering the two cards and the passbook to the defendant to create the Totten Trust in her favor as aforesaid. As a result, the account continued in its original form and the defendant refused to make the change subsequent to the settlor’s death.
The plaintiff takes the position that by the execution of the two cards and their delivery, together with the passbook, to her on November 6, 1958, a gift of the proceeds of the deposit was intended and effectuated by her acceptance and that, in any event, a Totten Trust was created in her favor. The Public Administrator claims, on the other hand, that no gift was intended nor effectuated and that the necessary steps to create a Totten Trust were not taken and consequently such a trust was not consummated.
It is clear and the court finds that no immediate gift of the bank account was intended or made by the decedent, Alma S. Linder, since, by the execution of the forms supplied by the defendant, she indicated her intention to create and formalize a Totten Trust in plaintiff’s favor of so much of the account as remained after her death.
It is settled law that in order to establish an inter vivos gift, there must be an intention on the part of the donor to make a present gift that will divest the owner of possession and dominion over the thing given and a delivery of the subject of the gift in consummation of the intention. (Beaver v. Beaver, 117 N. Y. 421; Gannon v. McGuire, 160 N. Y. 476; Young v. Young, 80 N. Y. 422.) The execution of the Totten Trust forms supplied by the defendant conclusively negates any intention on the part of the donor here to make the gift in praesenti. Nor may a gift causa mortis be spelled out from the facts adduced. Aside from the lack of an intention to make a present gift of any kind, the record is barren of proof that, if made, it was in view of the donor’s death. (Grymes v. Hone, 49 N. Y 17, 20.)
This leaves for consideration whether by the execution of the forms furnished by the defendant and their delivery, *842 together with the passbook, to the plaintiff a trust within the meaning of Matter of Totten (179 N. Y. 112) was consummated in favor of the plaintiff. In that case, the court held at pages 125-126 that: “A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an ir'revocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.”
In Matter of Fenelon (262 N. Y. 308, 311), however, the Court of Appeals held that a ‘ ‘ deposit is made when the initial deposit moneys are paid over, with instructions to credit the same in a certain form and the deposit is accepted and credited as directed.” (Emphasis supplied.) Thus, in Matter of Bodker (72 N. Y. S. 2d 237) decided in 1945 by Surrogate Delehanty of the Surrogate’s Court, Hew York County, it was held on the authority of Matter of Fenelon (supra) that a slip of paper in the handwriting of the deceased depositor, pasted on the fly leaf of the savings bankbook, containing language indicating his intention to create a Totten Trust in favor of a certain person, was wholly ineffective since the bank was not a party to his plan.
This court is constrained to reach the same conclusion in the case at bar. The two cards purporting to create a Totten Trust in plaintiff’s favor were never presented to and filed with the defendant bank prior to the death of the depositor. Consequently, the bank could not have accepted and credited the account in the form proposed by the depositor prior to her death. Her unilateral conduct, therefore, was wholly ineffective since the bank was not a party to her plan.
This court’s own research has disclosed a case which seemingly aids the plaintiff but, upon analysis, does not stand the test for permitting recovery by her in view of the nature of a Totten Trust as defined above. That case is Considine v. Considine (255 App. Div. 876) which involved the proceeds of an insurance policy as distinguished from the Totten Trust here claimed in which, as has already been noted, acceptance by the bank is a prerequisite for its consummation.
Judgment is accordingly granted, dismissing the plaintiff’s complaint on the merits, without costs and directing judgment *843 in favor of the Public Administrator as prayed for in his counterclaim, also without costs. The foregoing constitutes the decision of the court within the meaning of section 440 of the Civil Practice Act.
Settle judgment on two days’ notice. In the event that the plaintiff takes an appeal therefrom, execution of said judgment is stayed until the hearing and the determination of the appeal by the Appellate Division, Second Department, provided that, in accordance with the stipulation on the record, the proceeds of the bank account which is the subject of this action remain on deposit with the defendant savings bank until the further order of this court.