Lott H. Wells, S.
This is a contest between the son and daughter of Harry II. Rider over the proceeds of Massena Savings and Loan Association account No. 30499 for $3,051,11, in the names of “ Harry H. Rider or Gloria R. Miller ”. This constituted about one fifth of his assets at the time of his decease. Letters testamentary were issued March 27, 1961, to Joseph H. *543 Rider and Gloria R. Miller under Mr. Rider’s will executed March 15, 1954, whereby the estate was devised and bequeathed to them equally.
Harry H. Rider died February 8, 1961. Gloria R. Miller claims this account as entirely her own property due to the circumstance that on February 3, 1961, it purports to have been placed in a joint account with her and her father. Mrs. Miller under such claim withdrew this account July 10, 1961. Joseph H. Rider, as coexecutor brought this proceeding to discover property withheld under section 205 of the Surrogate’s Court Act. He insists that this bank account be distributed as part of his father’s estate. It is conceded neither contributed any funds toward this account.
The initial deposit was made and signature card signed in the name of the depositor, “Harry H. Rider”, July 8, 1955. Although this was a single name account, the signature card form used is for a joint account, to be withdrawn, “ by either before or after the death of either ”, in accordance with the form prescribed by subdivision 3 of section 239 of the Banking Law. The ledger cards are not signed. The title to the account remained unchanged from the opening date until February 3, 1961, when the words, 11 or Gloria R. Miller ’ ’, were added to the ledger card. The issue is whether the fund passes under the will or to Mrs. Miller as survivor under section 239 of the Banking Law. This question is to be resolved by whether it was validly established as a joint account so as to bring it within the operation of the statute. This depends upon what happened on February 3, 1961, when a power of attorney was used transferring the form of the deposit from his own name to the names of himself and Mrs. Miller, and whether or not the power of attorney gave the attorney in fact the right to modify deposit account No. 30499 and to open it in both their names jointly, and to the survivor.
On June 6, 1960, Harry H. Rider, executed the following short-form general power of attorney: ‘1 know all men by these presents : that i, harry h. rider, residing at No. 10 Hillcrest Avenue in the Village of Massena, St. Lawrence County, New York, have made, constituted and appointed, and by these PRESENTS, DO MAKE, CONSTITUTE AND APPOINT, GLORIA R. MILLER, My daughter, residing at No. 10 Hillcrest Avenue in the Village of Massena, St. Lawrence County, New York, my true and Lawful attorney for me and in my name, place and stead to receive all sums of money due me, pay all sums owed by me, to manage all of my property, both real and personal, in any manner that she may see fit with full power and authority to endorse checks, *544 deposit and withdraw any funds to my account in any bank, to mortgage, sell or lease any property, both real or personal, now held in my name, and to carry on transactions which could be carried out by me individually.
“ This power of attorney may be revoked at any time but shall remain in full force and effect until revoked in writing and a copy served upon all persons holding a copy of said power of attorney.
dated : This 6th day of June, 1960.
Harry Rider L. S.
(acknowledgment — June 6, 1960) ”.
A copy was filed with William H. Chittenden, executive vice-president and secretary of the Massena Savings and Loan Association, on or about that date. Mr. Rider personally brought the original to Canton, June 9,1960, and had it recorded in St. Lawrence County Clerk’s office, Liber 10, Power of Attorneys, page 17. On February 3, 1961, Gloria R. Miller, the attorney in fact, requested Mr. Chittenden at the Massena Savings and Loan Association, to change account No. 30499 into a joint account, in the names of “ Harry H. Rider and Gloria R. Miller, ’ ’ in form to be paid to either or survivor of them. Mr. Chittenden testified he received instructions February 3, 1961, from Gloria R. Miller, on account No. 30499, to change this account into the form to be paid to either Harry H. Rider or Gloria R. Miller, or the survivor of them. He carried out these instructions by adding the words, “ or Gloria R. Miller, added Feb. 3, 1961 ” to the ledger card. Gloria R. Miller did not sign the signature card as attorney in fact.
Opening this joint account, instead of continuing the funds in Mr. Rider’s name as sole depositor would have the effect of changing the testamentary plan made in 1954. The position of Joseph H. Rider is that the burden lay on Mrs. Miller to establish that such act by the 1 ‘ attorney in fact ’ ’ was duly authorized under section 225 of the General Business Law and binding upon this account and the true act and deed of the depositor. He does not charge Mrs. Miller with having schemed to subvert his father’s intention, his position being just that the account and deposit are not in the form described by subdivision 3 of section 239 of the Banking Law to vest title in the survivor to the money in the account at the time of death.
“ That the moneys were deposited to the account of [Harry H. Rider or Gloria R. Miller], is not a fact from which any inference of a transfer, or of a gift arises. In the absence of other evidence, the transaction simply evidenced a purpose of *545 the depositor of the moneys that they should be drawn out by either of the persons named. The only presumption would be that the depositor so arranged for the purposes of convenience ”. (Matter of Bolin, 136 N. Y. 177, 179 [1892].)
The act of the “ attorney in fact ” in making the deposit a joint account, is corroborated as knowingly and consciously created and sanctioned by Harry H. Eider, by the testimony of Mrs. Dorothy H. Brown, a neighbor and disinterested witness. This concerns a conversation at decedent’s home December 27 or 28, 1960: “ A. I went in and I heard Gloria talking with her father and after I said good morning, I said, ‘ am I intruding? ’ and Mr. Eider said, ‘ no ’, and he repeated, ‘ I have just told Gloria I would like my account in both our names, so if anything happens to me then it will be hers to take care of ’ ”.
“ The applicable statute, subdivision 3 of section 239 of the Banking Law, is clear beyond peradventure. The setting up of a joint account in the names of the depositor and another person, 1 in form to be paid to either or the survivor of them, ’ furnishes ‘ conclusive evidence ’ of an intention to vest title to the deposit in the survivor. These are the very words of the statute (Banking Law, § 239, subd. 3): ‘ The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either the savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor # #
Absent proof of fraud and undue influence, all that must needs be shown is ‘ the “ making ” of the deposit in statutory form ’, and that is established by evidence that the depositor signed the essential documents instructing the bank to ‘ credit the moneys deposited to a joint account in the statutory form’.” (Matter of Creekmore, 1 N Y 2d 284, 297.) The presumption, is of course, inapplicable where it appears that there is no “making” of the deposit as required by the Banking Law provision — when for instance, the deposit card signed by Harry H. Eider, July 8, 1955, for a single name account, the form given to him by the bank, and signed by him, was the setting up of a joint account in the names of the depositor and another person, “ in form to be paid to either or the survivor of them ”. However, when the money was turned over to the bank it was credited in correct form ou the ledger card for a single name account. “Unless the deposit was consciously made in that form, the statute should not apply. Whether it was consciously made should be a matter of proof”. (Matter of Yauch, 270 App. Div. 348, 353, 354, affd. 296 N. Y. 585.) “ Obviously, if *546 the law were otherwise, then the whim or error of the hanker, in writing the form of the deposit, or a direction by one who had converted the moneys, might operate to transfer title of the true owner to the moneys, without volition on his part. The law does not countenance involuntary transfers of that character”. (Matter of Fenelon, 262 N. Y. 57, 59 [1933].) “The need to establish volition on the part of the depositor to make the deposit in the statutory form is thus clearly recognized in Fenelon, concerning which the burden of proof throughout is upon the survivor claiming to own the deposit on account of the death of the other alleged joint depositor”. (Matter of Creekmore, 1 N Y 2d 284, 291, supra.)
The record shows three errors were made by the banker. One, the form of the deposit card signed July 8, 1955. Two, failing to add,1 ‘ either or survivor ’ ’ to the ledger card on February 3, 1961, when instructions were given by the ‘ ‘ attorney in fact ’ ’ to credit the money deposited to a joint account in statutory form. Three, on February 3,1961, failing to require the “ attorney in fact ’ ’ to date and sign the original deposit card, both as ‘1 attorney in fact ’ ’ and in her individual capacity as fellow depositor, in carrying out such instructions. The first error was not important when made. It was not consciously made. However, on February 3, 1961, when the “ attorney in fact” used her power of attorney to change the account into a joint account in form to be paid to ‘1 either or survivor ’ ’ it became important because the deposit card of the initial depositor was found to be in correct form for the “ making ” of the deposit in the statutory form without the “ attorney in fact” signing a new card. “ The question is * * * what were the terms of the deposit as made. The statute says that the presumption applies when ‘ a deposit shall be made ’ in the statutory form, payable ‘ to either or the survivor ’ of two depositors * * * How, then is that accomplished? We think the deposit is made when * * * moneys are paid over, with instructions to credit the same in a certain form and the deposit is accepted and credited as directed ”. (Matter of Fenelon, 262 N. Y. 308, 310-311 [1933].)
“ The law is well settled that a principal may do through an agent anything he may lawfully do personally. The General Business Law relating to powers of attorney was substantially revised in 1948 and the statutory short form power of attorney authorized. This was done to eliminate the technicalities inherent in interpretation of words used to grant authority under previous forms of power of attorney. Under the new article 13 of the General Business Law, the authorized forms provide *547 for appointment of attorneys in fact in certain fields of legal responsibility, such as real estate transactions, banking transactions * * * as well as several others. As to each of these areas of authorization, the law itself spells out in specific detail the scope of the authority granted.” (Torre v. Grasso, 11 Misc 2d 275, 276 [1958].)
A power of attorney is a “ statutory short form power of attorney”, as this phrase is used in sections 222 through 233 of the General Business Law, when, but only when, it is in writing and has been duly acknowledged by the principal and it contains the exact wording of clause “First” set forth in section 220 of the Gentral Business Law, except that any one or more of subdivisions (A) to (L) may be stricken out and initialed by the principal. — A “ statutory short form power of attorney ” may contain modifications or additions of the types described in section 234. (General Business Law, § 221.)
The statute spells out broad powers in the statutory short-form power of attorney under section 225 (General Business Law), covering construction of ‘ ‘ banking transactions ’ \ “ [T]he language conferring general authority with respect to ‘ banking transactions ’, must be construed to mean that the principal authorizes the agent: (1) to continue, to modify and to terminate any deposit account, or other banking arrangement made by or behalf of the principal prior to the creation of the agency; (2) to open either in the name of the agent alone, or in the name of the principal alone, or in both their names jointly or otherwise, a deposit account of any type with any banker or in any banking institution selected by the agent”.
“ The language in the quoted sections of the General Business Law is clear and unmistakable in authorizing an agent, under a properly executed statutory power of attorney”, to make a deposit in accordance with the form prescribed by subdivision 3 of section 239 of the Banking Law, “ [T]he General Business Law merely puts into practice the rule of law that anything a person can do lawfully, he may do through an agent ’ ’. (Torre v. Grasso, 11 Misc 2d 275, 276.)
The power of attorney form signed by decedent does not contain the exact wording of clause “First” of section 220 of the General Business Law, necessary to be a statutory short-form power of attorney under this section. ‘1 When a power is conferred upon an agent by a power of attorney, the meaning of general words in the instrument is restricted by the context and construed accordingly and the authority given is construed strictly, so as to exclude the exercise of any power that is not warranted either by the terms actually used or as a necessary *548 means of executing with effect the authority given ”. (Gaughan v. Nickoloff, 28 Misc 2d 555, 557 [1961].)
The power of attorney enumerates specific powers covering banking transactions. The scope of the authority granted appears sufficient to be construed under the broad powers granted by subdivisions (1) and (2) of section 225 of the General Business Law.
Under subdivision 3 of section 239 of the Banking Law, the executed intention (the signature card in account No. 30499) to make a deposit “ in form to be paid to either or the survivor ” brought up to date by the power of attorney, sufficiently evinced a purpose that the proceeds of such account should belong to the survivor after the death of the other. (Matter of Fenelon, 262 N. Y. 57, 262 N. Y. 308, supra.) The burden was upon the survivor to establish the intention of the decedent by additional evidence. (Matter of Creekmore, 1 N Y 2d 284, 290, supra.) This has been sustained by satisfactory evidence that decedent knowingly and consciously sanctioned the joint account. The conclusion must, therefore, be that account No. 30499 existing on the date of death in the names of decedent and his daughter in the Massena Savings and Loan Association, is not a part of the estate of Harry H. Eider and became the property of the survivor, Gloria B. Miller, at that time.