OPINION OF THE COURT
Lee L. Holzman, J.
This proceeding, relating to the ownership of account 005701218918 opened at Chase Manhattan Bank (now J.P. Morgan Chase) on January 23, 1996 in the names of the *615 decedent, Helen Butta, and the petitioner, Nicholas Pagani, was tried before the court without a jury. The “Statement of Issues” submitted pursuant to Uniform Rules for Surrogate’s Court (22 NYCRR) § 207.30 presents the following two questions: (1) Are the proceeds of the account an estate asset payable to the respondent, executor, because the account was a convenience account? (2) Are the proceeds of the account payable to the petitioner as the surviving joint tenant of a joint account with right of survivorship?
The decedent died at the age of 91 on August 18, 1999. Her will, executed on June 23, 1999, has been admitted to probate. The residuary estate is bequeathed to a revocable trust that was executed on the same day as the will. The petitioner, who is the decedent’s great nephew, is not a beneficiary of the estate. In an accounting proceeding in this estate, the executor valued the estate assets at almost $4,000,000.
There is no dispute with regard to the history of the account. The $240,000 deposited to open the account was supplied by the decedent. On the date of the decedent’s death the balance in the account was $151,485.75. All of the withdrawals from the account, whether by check or by “ATM,” were made by the petitioner solely for his own benefit. All of the statements and canceled checks for the account were mailed to the decedent at her residence. The decedent also reported all of the interest earned on the account on her income tax returns.
One of the problems in ascertaining whether the presumption of section 675 (b) of the Banking Law is applicable is that the bank has been unable to locate and produce the original signature card. Victoria J. Linton, who was a customer service representative at the bank when the account was opened, testified that she had probably opened between 500 and 1,000 accounts for customers during the years that she was employed as a service representative. Although she did not remember any specific conversation with the petitioner and the decedent on the date that the account was opened, she did recall that they came into the bank to open the account and that she told them among other things that the account would be payable to the survivor of them upon the death of the other. She believed that one of the reasons that she remembered the occasion was that she thought that the petitioner was a customer of the bank. In any event, she stated that she knows that she advised the petitioner and the decedent that this was a survivorship account because in January of 1996 Chase would not open an *616 account in two names unless it was a survivorship account. She testified that since Chase did not have accounts without survivorship rights, the title to a joint account with right of survivorship might be any of the following: “A or B,” “A and B,” or “A and B JTWROS.” The bank was able to produce an “electronic signature card summary” which is an electronic redacted version of the signature card. This summary contained: the account number, the names of both the decedent and the petitioner under the “Account Title,” the letter “J” under the “Account Type” and the electronic signatures of both the decedent and the petitioner.
The petitioner testified that he was at the bank for approximately 45 minutes when the account was opened. He specifically recalled that the customer service representative explained about a “sweep account” and that the account would be payable on death to the survivor. He testified that Ms. Linton was mistaken in her belief that he was a prior customer of the bank. On cross-examination, the executor’s counsel asked questions about the services that he had performed for the decedent. The petitioner testified that after the death of the decedent’s husband in 1989 he would go to the decedent’s residence about once a week. He did various chores for her, including writing checks, making minor repairs and collecting rents from her. apartment house tenants. He maintained that the decedent was the person who was primarily responsible for operating the property that she owned.
The last witness was the decedent’s accountant who prepared both her personal and business tax returns. He confirmed that all of the interest earned on the account was reported on the decedent’s returns. Although he did not testify that the petitioner was ever present when he discussed the decedent’s affairs with her, he stated that the decedent depended upon the petitioner with regard to the operation of her real estate interests.
Section 675 (b) of the Banking Law provides that when a deposit is made in the name of the depositor and another person to be paid to either or the survivor of them that “[t]he making of such deposit * * * shall, in the absence of fraud or undue influence, be prima facie evidence in any action * * * of the intention of both depositors * * * to vest title to such deposit * * * and additions and accruals thereon, in such survivor.” Any party who challenges the title of the survivor bears “the burden of proof in refuting such prima facie evidence.” (Id.)
The petitioner contends that the proof adduced brings into play the statutory presumption and that he should prevail *617 because the respondent failed to rebut this presumption. The respondent contends that the statutory presumption is not applicable because the petitioner failed to produce the signature card containing the required survivorship language and that there is no credible evidence to establish survivorship rights in the petitioner. Additionally, he asserts that the proof adduced established that there was a confidential relationship between the decedent and the petitioner which creates an inference of undue influence that was not rebutted and leads to the conclusion that the account was created solely for the convenience of the decedent.
Numerous Appellate Division cases have stated that the presumption of title vesting in the survivor under section 675 of the Banking Law does not apply where the signature card for the account failed to contain the words “payable to either or the survivor” or similar survivorship language (Matter of Stalter, 270 AD2d 594, lv denied 95 NY2d 760; Matter of Klecar, 207 AD2d 732; Matter of Coon, 148 AD2d 906; Matter of Timoshevich, 133 AD2d 1011; Matter of Burns, 126 AD2d 809; Matter of Camarda, 63 AD2d 837; Lombardi v First Natl. Bank of Hancock, 23 AD2d 713). These cases as well as the leading case of Matter of Fenelon (262 NY 308) clearly hold that survivorship language on the signature card suffices to establish a prima facie case under the statute. However, it does not necessarily follow either from these cases or the language of section 675 of the Banking Law that the statutory presumption is restricted to cases where the signature card contains survivorship language.
Matter of Coon (supra) is the case that comes closest to indicating that survivorship language on the signature card is the exclusive way that the statutory presumption arises. The Coon Court declined to apply the statutory presumption because there was no survivorship language on the signature card even though the rules and regulations of the bank stated that an account in two names was a joint account with survivorship rights and the signature card contained both a circled “J” to indicate a joint account and an acknowledgment by the depositors that the account was subject to the rules and regulations of the bank, a copy of which had been received by them. However, neither Matter of Fenelon (supra), nor any other Court of Appeals case holds that survivorship language on the signature card is the exclusive way to give rise to the statutory presumption. In Fenelon, the signature card contained survivorship language but the passbook did not. In hold *618 ing that the statutory presumption was applicable the Court stated:
“It is not the pass book which governs, for that word is not used in the statute. It is the ‘making’ of the deposit in statutory form which controls. How, then, is that accomplished? We think the deposit is made when the initial deposit moneys are paid over, with instructions to credit the same in a certain form and the deposit is accepted and credited as directed.” (308 NY at 311.)
In Matter of Fenelon (supra), the Court focused upon the statutory language that the presumption arises from the “making” of the deposit payable to either or the survivor and concluded, under the facts before it, that the notation on the signature card and not a legend that had been stamped on the passbook was the document that should be considered in determining whether the deposit had been made in the required form. A letter sent with a deposit requesting that an account be opened in the names of two persons, payable to either or the survivor, would appear to suffice under Fenelon if the bank accepted and credited the deposit as directed. Consequently, Matter of Coon (supra) has been questioned on the grounds that neither the statutory language nor Matter of Fenelon (supra) dictates that the statutory presumption is limited to cases where the survivorship language appears on the signature card (see Matter of Hamburg, 151 Misc 2d 1034, 1038; Estate of Hofmann, NYLJ, June 29, 1989, at 26, col 3). Surrogate Scarpino noted in Matter of Ancell (191 Misc 2d 252) that the Appellate Division, First Department case of Sutton v Bank of N.Y. (250 AD2d 447) raises a question as to whether the First Department follows the Matter of Coon (supra) implication that survivorship language on the signature card is the only way that the statutory presumption arises. Although the facts are not set forth in great detail in Sutton v Bank of N.Y. (supra), and it neither makes any reference to Matter of Coon (supra) nor any other case, it is apparent that it is at odds with at least some of the language in Matter of Coon (supra) from the following:
“we find no basis to disturb the court’s finding that plaintiff had carried her burden of proving, and defendant had failed to rebut, that the accounts opened by decedent were joint accounts and that she had a right of survivorship (see, Banking Law *619 § 675 [b]). This finding was properly based upon the bank rules and regulations, and the agreement of plaintiff and decedent to such rules as evidenced by their execution of signature cards.” (250 AD2d at 447.)
It appears that there are only two viable interpretations of Sutton v Bank of N.Y. (supra). The first is that the Court applied the statutory presumption even though the survivorship language was not contained on the signature card itself, but instead, was stated in the rules and regulations of the bank which were incorporated by reference on the signature card. The second is that the Court held that these facts were sufficient to establish a common-law survivorship account without the benefit of the statutory presumption.
This court, based upon the statutory language (Matter of Fenelon, supra; Sutton v Bank of N.Y., supra), holds that while survivorship language on the signature card itself is the best evidence to give rise to the statutory presumption, and, perhaps, in most cases the only practical way, it is not the exclusive way. The statutory presumption arises upon any proof that clearly establishes the deposit was made and credited in the name of both parties to be paid to either or the survivor of them.
In any event, the issue of whether survivorship language on the signature card is the exclusive means by which the statutory presumption arises is only a question of the quantum of proof that the survivor is required to adduce to prevail because it is well established that the surviving tenant will prevail, without the benefit of the statutory presumption, by establishing a common-law joint account with right of survivorship (Matter of Antoinette, 291 AD2d 733, lv denied 98 NY2d 604; Matter of Coon, supra; Matter of Timoshevich, supra; Matter of Thomas, 43 AD2d 446; Lombardi v First Natl. Bank of Hancock, supra). Once the survivor has presented a prima facie case for a survivorship account, whether it be established under the statutory presumption or by meeting the burden of proof required under common-law principles, the party contesting the title of the survivor is required to establish one of the following: fraud, undue influence, lack of capacity to make a gift, or that the account was opened for the convenience of the deceased depositor (Banking Law § 675 [b]; Matter of Kleinberg v Heller, 38 NY2d 836; Matter of Klecar, supra). Furthermore, in those cases where an account is determined to be a true joint account each joint tenant is vested with a present one- *620 half interest in the money deposited even though only one of them was the sole donor (Matter of Kleinberg v Heller, supra; Matter of Bricker [Krimer] v Krimer, 13 NY2d 22).
Here, the petitioner cannot be blamed for the failure of the signature card to be in evidence because it was the bank that inadvertently lost or destroyed the card. Under these circumstances it cannot be presumed that the signature card signed by the decedent and the petitioner did or did not contain survivorship language. However, the uncontroverted proof adduced established: that the redacted electronic signature card reflects that the type of account was “J,” a joint account; that the only type of account that the bank would open at the time that this account was opened in the names of two depositors was a joint account with survivorship rights; and that the bank employee who opened the account told the decedent and the petitioner that the account upon the death of one of them was payable to the survivor. Although this employee appears to have been mistaken as to the reason why she remembered the decedent and the petitioner, there was no reason to doubt her credibility. Her testimony is similar to the testimony of an attorney who supervises the execution of numerous wills and can be positive that a particular will was executed with the required statutory formalities without necessarily being accurate as to all of the other details regarding the execution ceremony. Under the unique fact pattern presented the court holds, in the alternative, that the deposit was made in the names of the decedent and the petitioner payable to either or the survivor, entitling the petitioner to the presumption under section 675 (b) of the Banking Law that the proceeds on deposit in the account vested in him as the surviving joint tenant of the account, or that the petitioner adduced sufficient proof to meet his burden of proof under common-law principles that the account was intended to be a joint account with survivorship rights (Matter of Antoinette, supra; Sutton v Bank of N.Y., supra).
The bank statements and canceled checks for the account that are in evidence do not support the respondent’s contention that the account was opened for the convenience of the decedent. Instead, they indicate that the decedent knew that the petitioner was using the account for his own benefit and that she did not object. The statements and canceled checks were mailed to the decedent’s home from the time the account was opened in January 1996 until her death in August 1999 and there is no reason to believe that she did not read them. *621 They reflect that the petitioner had issued more than 100 checks and made more than 100 withdrawals on an “ATM” card solely for his benefit, with the result that the initial deposit of $240,000 had dwindled to $151,485.75 on the date that the decedent had died. Although the proof adduced indicated that the petitioner assisted the decedent with chores, including her real estate interests, there was no proof that she relied solely upon the petitioner or that she was in any way incompetent. To the contrary, it appears that the decedent lived by herself, consulted with her accountant without anyone else being present and that, more than three years after the account was opened, she executed both a lifetime trust and a will under which the petitioner did not receive any portion of her substantial estate. The fact that the decedent decided to reward the petitioner, in gratitude for the services that he performed for her, with a joint account with survivorship rights in an amount equal to approximately 6% of the death value of her assets does not in any way reflect that he was in such a confidential relationship with her that it should be inferred that he exerted undue influence with regard to the account. To reach this conclusion, it would also have to be concluded either that the petitioner did not want to exert undue influence with regard to the balance of the decedent’s assets or that he was unable to.
For the reasons stated above, the court holds that the account is a joint account with right of survivorship. Accordingly, a decree may be settled directing the respondent to deliver to the petitioner any tax waiver for the account that is in his possession, directing the bank to recognize the petitioner as the sole owner of the account and denying the claim of the estate to any portion of the account.