■ In the Matter of KATHLEEN G., Appellant, v ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. —Harvey, J. Appeal from an order of the Surrogate's Court of St. Lawrence County (Nelson, S.), entered January 2, 1990, which dismissed petitioner's application to vacate the surrender of her infant daughter to respondent for adoption.

Petitioner is the mother of three children, the eldest of whom, Elizabeth, was born on February 17, 1982. Apparently Elizabeth was molested when she was four years old and both she and petitioner received counseling in an attempt to resolve subsequent problems. Nevertheless, Elizabeth was ini-

tially placed in foster care with a couple (hereinafter the foster parents) under a voluntary temporary placement agreement dated January 4, 1988. Elizabeth remained with the foster parents until the end of the school year, at which time she returned to live with petitioner.

That fall, petitioner entered intensive day therapy at a psychiatric center. Thereafter, in November 1988, petitioner allegedly discussed with her caseworker, Nancy Kimble, the possibility of putting Elizabeth up for adoption. The next meeting between Kimble and petitioner occurred on December 6, 1988, at which time petitioner allegedly informed Kimble that she had decided to place Elizabeth for adoption with the foster parents. Subsequently, on December 21, 1988, Kimble drove petitioner to St. Lawrence County Surrogate's Court, where they were met by Ruth O'Shaughnessy, an adoption worker with respondent. According to O'Shaughnessy, she read the surrender document aloud and explained it to petitioner. The three then appeared before the Surrogate who, after asking petitioner if she had read and understood the document, acknowledged petitioner's signature.

In February 1989, petitioner, apparently upset about a lack of visitation with Elizabeth, contacted Kimble complaining that she had been led to believe that she could see the child when she so desired. Kimble and O'Shaughnessy advised petitioner, as they had done prior to the adoption, that visitation was up to the foster parents. Dissatisfied, petitioner subsequently commenced this proceeding to vacate the surrender, alleging that she had been misled and coerced by respondent's representatives.* Following a nonjury trial, Surrogate's Court dismissed the petition and this appeal followed.

There must be an affirmance. Following the trial in which all parties presented witnesses, Surrogate's Court issued a written decision which, among other things, found unbelievable the testimony of petitioner and credited the testimony of respondent's witnesses. These latter witnesses testified that the surrender instrument was fully discussed with petitioner and it was clearly explained to petitioner that she would be surrendering all parental rights by signing it, and that no proceeding to revoke the surrender could be maintained after

---

* Petitioner commenced this proceeding to vacate the surrender more than 30 days after the execution of the surrender instrument on December 21, 1988. Although this fact would normally bar the commencement of such a proceeding (see, Social Services Law § 384 [5]), the 30-day limit does not apply where proceedings are brought "on the ground of fraud, duress or coercion in the execution or inducement of a surrender" (ibid.).

30 days except on the ground of fraud *(see,* Social Services Law § 384 [5]). O'Shaughnessy further testified that she advised petitioner that, while both petitioner and respondent wanted the child to remain with the foster parents, respondent did not take the surrender with any specific conditions. According to O'Shaughnessy, it was clearly understood that, although it seemed that the foster parents would be willing to allow some visitation, any such contact would be at their discretion and no conditions would be accepted with the surrender. Significantly, the transcript of the surrender reveals that Surrogate's Court asked petitioner if she had read and understood the surrender document, including the fact that there were no conditions, and that petitioner replied in the affirmative.

Based on this and other evidence, we must agree with Surrogate's Court that "[p]etitioner voluntarily executed the surrender instrument after being told what the instrument meant and what the effect would be on custody, guardianship and parental rights". In our view, the court's factual findings in this instance must be accorded great deference in light of that court's better "position to evaluate the testimony, character and credibility of the litigants" *(Matter of Flynn-Stallmer v Stallmer,* 167 AD2d 575, 576; *see, Matter of Karen Y.,* 156 AD2d 823, 826, *lv denied* 75 NY2d 710).

Finally, we note that although petitioner raises some question as to the constitutionality of the surrender process, this issue was not litigated in Surrogate's Court and the Attorney-General was not provided with notice *(see,* CPLR 1012 [b]; Executive Law § 71). Absent the statutory notice, it would be inappropriate for us to review petitioner's arguments *(see, Matter of Tiffany B.,* 111 AD2d 168, *lv denied* 65 NY2d 606, *cert denied sub nom. Blake v Nassau County Dept. of Social Servs.,* 474 US 862; *Matter of Weinberg v Omar E.,* 106 AD2d 448; *Matherson v Marchello,* 100 AD2d 233, 241, n 4; *Matter of Tonya Louise M.,* 91 AD2d 868, 869; *Matter of Robert S. T.,* 86 AD2d 748, *lv dismissed* 57 NY2d 606).

Order affirmed, without costs. Mahoney, P. J., Weiss, Yesawich, Jr., Crew III, and Harvey, JJ., concur.