■ In the Matter of the Estate of PASQUALE CAPALDO, Deceased. NORA MANON, as Executor of PASQUALE CAPALDO, Deceased. Appellant; CHRISTOPHER CAPALDO et al., Respondents. [694 NYS2d 233] —Peters, J. P. Appeal from an order of the Surrogate's Court of Schoharie County (Bartlett, III, S.), entered April 8, 1998, which, *inter alia*, denied petitioner's application to sell real estate owned by decedent to satisfy debts and claims against the estate.

Petitioner, daughter of Pasquale Capaldo (hereinafter decedent), filed petitions to judicially settle her intermediate account as executor of decedent's estate and for an order permitting the sale of decedent's real property to satisfy outstanding estate debts. Several of decedent's children filed objections to the accounting while respondent Christopher Capaldo (hereinafter Capaldo), decedent's son, also filed an objection to the request for permission to dispose of real property. Underlying all such objections is the allegation that petitioner withheld $33,000 in cash which was removed in their presence from decedent's safe on the day of his funeral.

At the hearing held to determine whether there were any additional monies in the estate that were not reported by petitioner in her accounting, Capaldo testified that decedent kept two safes in his home. Approximately three days prior to his death, the safes were removed to petitioner's home where decedent was residing. After his funeral on January 23, 1995, Capaldo testified that the safes were opened in not only his presence but also in the presence of several other family members.[1] He testified that the contents of one safe included $33,000 in one hundred dollar denominations which were counted out in view of the family. The other safe was filled with approximately $200 in change, some jewelry and miscellaneous documents. While the jewelry was distributed to various family members, Capaldo testified that petitioner insisted on retaining the money until all of the estate expenses were settled. Capaldo further claimed that on January 20, 1995, he took

1. We note that several of such family members were disinherited by decedent's will.

petitioner to her bank where he observed her to have $20,000 in cash yet only deposit $8,000.[2] He believed that her cash came from the safe which contained a portion of a $54,000 life insurance settlement that decedent had earlier received from a relative. On cross-examination, Capaldo admitted that despite no mention of the $33,000 in his or any other copy of the probate petition, he never questioned its omission and never reported it to the police. He again admitted that he failed to mention the missing $33,000 to either Surrogate's Court or any of its staff at the probate hearing and, despite his attendance at a meeting with former estate attorney Michael Lynch, he again failed to make mention of it.

Concerning the discovery of the $33,000, the testimony of Generoso Capaldo, another of decedent's sons, and that of Geraldine Fletcher, decedent's daughter, closely mirrored that of Capaldo. Fletcher, however, had also appeared in Surrogate's Court on the probate petition and failed to mention the missing $33,000 despite her spew of a host of other vituperative allegations against petitioner.

Petitioner agreed that the safes were, in fact, opened on the day of the funeral but vehemently denied that $33,000 in one hundred dollar bills was found therein. She admitted to making a deposit of $8,000 into her checking account not on January 20, 1995 as Capaldo had claimed but on January 27, 1995. She confirmed that she wrote several other checks on that date pertaining to expenses of the estate, maintenance of decedent's house where Capaldo resided and an unpaid funeral bill of her mother. Petitioner contended that funds for these checks, totaling approximately $20,000, were derived from personal funds. Although at that time she was receiving approximately $800 in disability insurance compensation every two weeks, she contended that she had amassed personal savings from her hospital employment from which she had received an income of $5,000 per month, which had ceased one year prior to decedent's death. Finally, petitioner contended that the items of jewelry and personal effects found in the safe were given to her by decedent prior to his death and, therefore, did not have to be accounted for.

Surrogate's Court found insufficient evidence to support the contention that $33,000 in cash was found in the safe. Instead, the court found the safe contained $8,000 in cash and that this

---

2. Although Capaldo corrected his testimony with respect to when the safes were actually opened after talking to his sister Geraldine Fletcher during a recess, he declined the opportunity to change any other portion of his testimony.

was the money that was deposited by petitioner in her bank account. The court further rejected petitioner's contention that the contents of the safes were a gift to her from decedent and, for this and other reasons not relevant on appeal, rejected the accounting. Concluding that the estate might well have sufficient assets to avoid a sale of its real property to meet expenses, the court denied, without prejudice, the application for permission to sell real estate. Petitioner appeals only from that portion of the order which found that she had taken $8,000 from the estate.[3]

Surrogate's Court is statutorily authorized to "exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents, and * * * [to] determine all questions, legal or equitable" (SCPA 201 (3); see, Matter of Stortecky v Mazzone, 85 NY2d 518). In so reviewing an accounting, the proponent bears the burden of demonstrating sufficient evidence to establish that all of assets of the estate have been fully accounted for (Matter of Schnare, 191 AD2d 859, 860, lv denied 82 NY2d 653). Contrary to respondents' contentions, our review of the record reveals that decedent's receipt of $54,000 in life insurance proceeds was sufficiently accounted for. Initially invested into the Richmond County Savings Bank in decedent's name with that of his daughter Carol, the bank statements admitted into evidence reveal that while not all checks drawn on that account have been produced and cash withdrawals do not indicate for whose benefit the sums were taken, it appears that shortly before decedent's death, $5,000 was withdrawn, bearing the notation "Dad". With the court discrediting all "eyewitness" accounts of the removal of $33,000 in one hundred dollar bills from decedent's safe as it is entitled to do "in light of that court's better 'position to evaluate the testimony, character and credibility of the litigants'" (Matter of Kathleen G. v St. Lawrence County Dept. of Social Servs., 170 AD2d 777, 779, quoting Matter of Flynn-Stallmer v Stallmer, 167 AD2d 575, 576, lv dismissed 77 NY2d 939), we agree that sufficient evidence exists to support the court's conclusion that the $8,000 deposited into petitioner's personal bank account was derived from estate property.

Finding no basis upon which we would disturb that determination (see, Matter of Schnare, supra), we affirm.

Spain, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.

---

3. The challenge to that portion of the order denying petitioner permission to sell real estate was abandoned on appeal.