Samuel J. Silvermau, S.
On this petition of the executor to determine the validity of certain claims, the court renders the following decision as to the claims of Asya Tranfo.
Decedent died in June, 1964. The claimant, Asya Tranfo, is decedent’s daughter and a beneficiary under his will. She has made certain claims as a creditor against the estate, which are disposed of as follows:
1. $3,000 advanced re horse: In 1961, prior to decedent’s death, decedent asked the claimant to buy a horse, as a gift for her husband, for $3,000, which he promised to repay to her in 1962. She paid $3,000 for the horse and made the gift. Although there is evidence of numerous payments by the testator thereafter for the account of the claimant and her husband, in amounts which aggregate much more than $3,000, there is no indication that these payments were intended to be or accepted as repayment of its advance. The burden of proving payment is on the person who claims payment (Conkling v. Weatherwax, 181 N. Y. 258, 269 [1905]); that burden has not been met. The claim is determined to be valid at $3,000, with interest at the legal rate from seven months after the appointment of the executors.
2. In June, 1962, decedent created an inter vivos trust with himself as trustee, the income of which was to be for the benefit of claimant during decedent’s life, and on his death the principal *571 was to go to her. Contemporaneously with the creation of such trust, decedent opened accounts in trust for claimant. Claimant contends that decedent withdrew $16,529.73 from the trust on two occasions and converted it to his use.
(a) A preliminary question is whether the Surrogate’s Court has jurisdiction to determine the claim. I hold that the court does have jurisdiction. While jurisdiction over inter vivos trusts is normally in the Supreme Court, I know of no authority for the proposition that the mere fact that an inter vivos trust is involved automatically excludes the jurisdiction of this court. Indeed, the only express statutory limitation that I have found on the jurisdiction of this court with respect to inter vivos 'trusts is the negative provision of SCPA 209 (subd. 4) which states that “ Nothing herein provided shall be construed to confer jurisdiction on the court over inter vivos trusts” — but presumably this means that nothing in subdivision 4 of SCPA 209 confers jurisdiction. It remains true that the Surrogate’s Court has the general jurisdiction expressed in SCPA 201 (subd. 3) ‘ ‘ to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to the affairs of decedents ’ ’. This statute is to be read in accordance with the statutory scheme for “ 1 Concentration of jurisdiction as to decedents’ estates ’ ” in the Surrogate’s Court. (Matter of Raymond v. Davis, 248 N. Y. 67, 72 [1928].)
Here all parties in interest are before the court. No accounting of the inter vivos trust is necessary, as the decedent’s executors have stipulated that even if they were given a reasonable time to file an account they would be unable to give any more information than is already in the record before the court. The decedent died and the inter vivos trust terminated over six years ago.
Here, as in Matter of Raymond v. Davis (supra), what is involved is a claim to share as a creditor in the assets of the estate. In Matter of Raymond v. Davis, the claim arose as a result of a joint venture as to whose liquidation and accounting the Surrogate’s Court would normally not have jurisdiction. Here, it arises as to an inter vivos trust as to whose liquidation and accounting this court would normally not have jurisdiction. What Chief Judge Cakdozo said in the Raymond case (248 N. Y. at pp. 71, 72) is equally applicable here: lt Liquidation may be ordered by a decree of the surrogate as an incident to the allowance or rejection of a claim to share as creditor in the assets of the estate. Only by such relief can there be complete justice between the parties without oppressive expense or harrowing delay * * * To remit the claimant to another forum after *572 all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked.”
(b) On the merits, it is clear that in the contingency which has occurred, the claimant, Asya Tranfo, is the only person interested in the trust. By the terms of the trust, the income of the trust was to be paid to the daughter Asya during her lifetime, and on the death of the decedent survived by his daughter Asya, the entire trust corpus was to be paid over to her. The executors have paid to her all identifiable trust properties. It is also clear that decedent withdrew $16,529.73 from the trust bank account in November, 1962 and January, 1963. No explanation has been furnished as to what this money was withdrawn for. It is the duty of a fiduciary to account for his handling of trust funds and for all withdrawals thereof. If he is unable to account, or in the event of his death if his personal representatives are unable to account, the fiduciary or his estate must be charged with the funds so withdrawn. Accordingly, the court holds that the claim of Asya Tranfo with respect to these withdrawals is valid and the claim is allowed in the sum of $16,529.73, with interest at the legal rate on $1,500 from November 30, 1962 and on $15,029.73 from January 8, 1963.
3. After decedent’s death claimant went with her husband to Israel (where decedent was buried), at the request of one of the executors, her brother, and incurred $651.69 of unreimbursed expenses for herself and her husband in connection therewith. This was at the time of the decedent’s funeral. It appears to the court that this was the kind of trip that a daughter would normally make to attend her father’s funeral and that there is no legal obligation on the estate to reimburse her for the expense. Accordingly, this claim is determined not to be valid.
4 and 5. After decedent’s death, claimant, a resident of Italy, made several trips to New York. While in New York she worked with the executors in going over her father’s papers, many of which were in the Russian language and she spent a great deal of time translating them. She was familiar with the Russian language and with her father’s cryptic notations, and was the person most familiar with her father’s affairs. It seems to me appropriate for the executors to call on the person with this special familiarity for assistance. The trips, however, were not exclusively for the purpose of helping the executors in their general estate functions; to some extent they were to look after claimant’s individual interests. With respect to the June-July, 1964 trip which is the subject of the fourth claim in claimant’s *573 answer, the full amount of $2,100 for claimant’s services is allowed; however, as to her traveling expenses for $1,811.56 the court will allow only % thereof, or $1,358.67, as to some extent the trip was not solely for the benefit of the estate. Interest at the legal rate will run from July 26,1964.
As to the December, 1964 trip, the subject matter of the fifth claim, the court will allow the $600 claimed for services, but not the expenses, as it appears that that trip was recognized by claimant as primarily ‘ ‘ my private affair ’ ’. Interest on the $600 will run from December 24, 1964.
6. Claimant made trips to New York in 1966 and 1967 to participate in discussions in connection with an effort by all parties to settle the many disputes in the estate. It does not appear to the court that the services that she rendered were of a special nature for which the executors would be justified in retaining her or paying her and accordingly the sixth claim for $2,990 set forth in her answer is determined not to be valid.