In the Matter of the Estate of CATHERINE CAMARDA, Deceased. MARY SCHIAVONE, as Executrix of CATHERINE CAMARDA, Deceased, Appellant; NICHOLAS CAMARDA, JR., et al., Respondents.—Order, insofar as it imposes a surcharge of $5,000 unanimously modified to $4,400; insofar as it imposes a surcharge of $1,500 for the household furnishings reversed and remitted unless within 20 days the parties stipulate to the value of the property in the possession of Rose Camerota and reduce the amount of the surcharge by that sum; and otherwise order affirmed, with costs to objectants. Memorandum: Appellant Mary Schiavone is the executrix of the estate of her mother, Catherine Camarda, whose will was admitted to probate in Surrogate's Court, Onondaga County, in 1972. She filed an accounting of the estate on February 8, 1975 and her sister, Rose Camarda Conroy Camerota, and her brother, Nicholas Camarda, filed objections in April, 1975. After a nine-day trial, the Surrogate entered an order in which he sustained three of the objections. The executrix appeals from that order. Objection No. 1 charged that the executrix had failed to account for the personal property and household furnishings of the decedent. The Surrogate found that under the terms of the will all of the furnishings were bequeathed to Rose. The evidence indicated that the household furnishings had been variously distributed in such a manner that it was virtually impossible to trace them. Inasmuch as the executrix had placed a value of $1,500 on the furnishings when she filed the New York State estate tax return, the Surrogate adopted that sum and surcharged the executrix in that amount. The objectants did not dispute that value; nevertheless, there was testimony by Rose Camerota that she had taken the living room furniture. The executrix should not be surcharged for the value of that furniture but in other respects the evidence supports the determination of the Surrogate. The duties of an executrix are primarily and generally to settle and distribute the estate of her decedent *(Matter of Kohler,* 231 NY 353, 365). If the executrix fails to keep clear and accurate accounts of the estate entrusted to her, all presumptions are against her and all doubts are to be resolved adversely to her *(Matter of Shulsky,* 34 AD2d 545, 547, app dsmd 27 NY2d 743). Objection No. 2 charged that the executrix failed to account for cash assets in the amount of $5,000. Testimony established that the executrix had gathered various packets of money from the home of the decedent on the day of her death and estimated the amount at approxi-

mately $5,000. The Surrogate treated the executrix' inclusion of $5,000 in cash on the New York State estate tax return as an admission of the receipt of that amount by the executrix. This determination is supported by the record and any doubts must be resolved against the executrix *(Matter of Shulsky, supra)*. There was uncontested testimony, however, that she had distributed amounts of $300 to her sister Rose and $300 to her brother Nicholas. The amount of the surcharge therefore should be reduced by the $600 already distributed. Objection No. 7 charged that the executrix had failed to include in her accounting money on deposit in three bank accounts which had been held in the names of the decedent and the executrix. Relying on section 675 of the Banking Law, the executrix contended that these accounts were joint bank accounts in which she had the right of survivorship and that therefore the money was hers. Section 675 of the Banking Law provides, in pertinent part, as follows: "(a) When a deposit of cash * * * has been made * * * in the name of [the] depositor * * * and another person and in form to be paid or delivered to either, or the survivor of them, such deposit * * * and any additions thereto made, by either of such persons * * * shall become the property of such persons as joint tenants * * * (b) The making of such deposit or the issuance of such shares in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which the banking organization, foreign banking corporation, surviving depositor or shareholder is a party, of the intention of both depositors or shareholders to create a joint tenancy and to vest title to such deposit or shares, and additions and accruals thereon, in such survivor. The burden of proof in refuting such prima facie evidence is upon the party or parties challenging the title of the survivor." Where the form of the account is according to the foregoing section, it is presumed that the parties intended to create an account held in joint tenancy with the right of survivorship *(Matter of Kleinberg v Keller,* 38 NY2d 836; *Matter of Reardon,* 25 AD2d 370). The words of survivorship must appear on the signature card or ledger that creates the bank account *(Matter of Fenelon,* 262 NY 308; *Matter of Coddington,* 56 AD2d 697) and the passbook is evidence only of deposits, so that words of survivorship thereon are not controlling *(Matter of Fenelon, supra; Matter of Coddington, supra)*. The statutory form is met in two of the bank accounts at issue here. Onondaga Savings Account No. 584,081 has a signature card and a ledger card both signed by the decedent which contain the words "joint" and "either or survivor may draw". With respect to Syracuse Savings Bank Account No. 254,794, words of survivorship appear on the ledger card signed by the decedent. Words of survivorship on the ledger card have been found sufficient to meet the statutory form *(Matter of Fenelon, supra,* p 311). Both of those accounts, therefore, give rise to a presumption of joint tenancy pursuant to section 675 of the Banking Law. The burden of rebutting that presumption is on the challenger thereto, and he may prevail only by "direct proof or substantial circumstantial proof, clear and convincing and sufficient to support an inference that the joint account had been opened in that form as a matter of convenience" *(Matter of Coddington,* 56 AD2d 697, 698, *supra; Matter of Poltorak,* 39 AD2d 599, mot for lv to app den 31 NY2d 643), or by proving undue influence, fraud or lack of capacity *(Matter of Kleinberg v Keller,* 38 NY2d 836, 840, *supra; Poersch v Eldridge,* 36 AD2d 193, 195). The evidence in the record at bar establishes that these accounts were opened as a matter of convenience. Decedent was an elderly Italian lady who could neither read nor write in either Italian or English. She could sign her name only by copying the configurations of her signature. She was

unable to get around by herself because of her illiteracy and was dependent on her children to conduct her business affairs. There was no evidence to indicate that she intended to create a joint account or that she understood the nature and consequences of a joint account. She kept the passbooks herself, and the executrix herself testified that she would not have withdrawn any money from the accounts without her mother's permission. Perhaps most persuasively, the decedent's will leaves all of her estate to her four children, "share and share alike", which certainly indicates an intent to leave her estate to all four children. Since these bank accounts constitute the major portion of that estate, it should not be presumed that she intended to give one daughter rights of survivorship in the bulk of her estate. Finally, the executrix herself did not seem to consider that these were joint accounts. Immediately following her mother's death, she took her sister with her to withdraw the money from the accounts and established a new account jointly in the name of herself and her sister. She kept some of the money and had bonds and checks made payable to certain members of the family. A major factor in determining whether a bank account is opened as a matter of convenience or as a joint account is the conduct and statements of a surviving cotenant (Matter of Poltorak, 39 AD2d 599, supra). Although the executrix never delivered the bonds and checks, and although she later withdrew all the money from the account, her initial conduct belies her belief that the money was hers. With respect to the other bank account, Onondaga Savings Account No. 616,503, the record clearly establishes that the funds in that account were transferred from an earlier account held in the names of decedent and her husband, Salvatore. At the time of his death, it was decided to transfer that money into a new account in the names of Mary and her mother. The only words of joint tenancy appear on the passbook. It is therefore clear from the rest of the testimony that this account also was created as a matter of convenience. In transactions of this type, where one of the parties is elderly, illiterate, or otherwise incapacitated and there is a fiduciary relationship such as mother and daughter, the burden of proof is on the person handling the financial affairs to show that the incapacitated party understood the nature of the transactions and that her will was not overborne by the stronger party (Allen v La Vaud, 213 NY 322; Matter of McMurdo, 56 AD2d 602; Matter of Gordon, 17 AD2d 165; Matter of Dziadzio, 31 Misc 2d 125; Matter of Ricisak, 2 Misc 2d 717). Given the fiduciary or confidential relationship which existed between decedent and the executrix, the fact that decedent was elderly and could neither read nor write, and that decedent entrusted her financial affairs to her daughter, the burden clearly shifted to the executrix to show that her mother knowingly and willfully intended to make a gift to her of the assets in the bank accounts. She did not sustain her burden (see Matter of McMurdo, 56 AD2d 602, supra; Matter of Levy, 19 AD2d 413) and should be surcharged in the amount of those accounts. (Appeal from order of Onondaga Surrogate's Court—judicial settlement.) Present—Moule, J. P., Cardamone, Simons, Dillon and Denman, JJ.