■ In the Matter of the Estate of ESTELLA MAY MINK, Also Known as ESTELLA M. MINK, Deceased. DAVID SCHRAMM, as Administrator of the Estate of ESTELLA MAY MINK, Also Known as ESTELLA M. MINK, Deceased, Appellant; WALTER J. DEWITT, as Administrator of the Estate of SHARON L. CROMIE, Deceased, Respondent, et al., Respondent. [937 NYS2d 401]—

Egan Jr., J.

We affirm. "[T]he long established view is that a fiduciary voluntarily accepts an appointment with an awareness of the general obligations to be performed, and the direct and indirect costs of performing tasks to fulfill such obligations are covered by the [statutory] commission" (*Perez v Rodino*, 184 Misc 2d 855, 858 [2000]). Hence, a fiduciary normally should not agree to serve "where the distance between his residence and this jurisdiction is so great that he cannot properly discharge his fidu-

ciary responsibility without incurring expenses for travel that are in a greater sum than he wishes to absorb as a charge against his statutory commissions" (*Matter of Picker*, 103 Misc 2d 594, 596 [1980]). Nevertheless, "the expenses incurred by a fiduciary as an incident of necessary travel in the discharge of his fiduciary duties may be paid from the estate to the extent they are reasonable and necessary" (*id.* at 595; *see* SCPA 2307 [1]).

Here, petitioner purportedly incurred $14,460.13 in travel expenses for which he reimbursed himself from the assets of decedent's estate. Inasmuch as Cromie's death and Carter's unwillingness to serve as an executor in accordance with decedent's wishes appears to have necessitated petitioner's appointment, we agree with Surrogate's Court that petitioner's travel expenses were both necessary for the orderly administration of decedent's estate and anticipated by the other beneficiaries thereof. We also agree, however, that the sum claimed by petitioner, which represents more than 14% of the total estate assets, was not reasonable under the circumstances—particularly in view of the fact that petitioner accepted his statutory commission. Hence, Surrogate's Court properly reduced the travel expenses claimed by petitioner to $8,460.13 and ordered him to reimburse the estate for the difference.

We reach a similar conclusion regarding the $3,193.49 disbursement that petitioner made from estate assets to Schramm, a resident of Virginia, for travel expenses that Schramm allegedly incurred traveling to New York to assist petitioner with the disposal of decedent's personal property. Assuming, without deciding, that reimbursing a nonfiduciary for travel expenses indeed is permissible, we cannot say that Surrogate's Court erred in disallowing such reimbursement here. By all accounts, decedent's personal property had little or no monetary value. Accordingly, while Schramm's assistance in this regard may have personally benefitted petitioner by expediting the process of sorting and disposing of decedent's personal effects, we fail to see how Schramm's contribution substantially benefitted decedent's estate (*see Matter of Lurje*, 64 Misc 2d 569, 573 [1970]).

Finally, petitioner contends that Surrogate's Court erred in directing him to reimburse the estate $3,625—allegedly representing a cash payment of counsel fees—as well as $3,311.25 in excess statutory commissions, the latter of which petitioner asserts he already has repaid. As the administrator of decedent's estate, it was incumbent upon petitioner to maintain "clear and accurate records," absent which "all presumptions . . . and all

doubts are to be resolved adversely to [him]" (*Matter of Camarda*, 63 AD2d 837, 837 [1978]). Although petitioner provided—in the context of his posttrial motion—billing records suggesting that counsel for the estate did receive a payment in the amount of $3,625 (even though such payment was not reflected on the initial accounting filed in this matter), petitioner neither tendered any such proof at trial nor offered any explanation for failing to do so. More to the point, petitioner neglected to establish the source of the funds utilized to make the payment in the first instance. Indeed, all that petitioner's testimony on this point does establish—with any degree of clarity—is that he did not disburse such funds from estate assets in his fiduciary capacity. We reach a similar conclusion regarding petitioner's claim that he repaid the estate in full for the excess commissions that he received. Although petitioner testified that he repaid $8,542.16 in excess commissions, the original accounting only reflects a repayment in the amount of $5,400, and petitioner did not otherwise document or substantiate the additional sum he purportedly repaid. In light of petitioner's failure to appropriately document these transactions, we cannot say that Surrogate's Court erred in ordering petitioner to reimburse decedent's estate accordingly.

As for petitioner's subsequent motion for reconsideration and leave to file an amended accounting, it is apparent from a review of the record that petitioner's motion, insofar as it sought reconsideration, actually was one to reargue—the denial of which is not appealable (*see Matter of Biasutto v Biasutto*, 75 AD3d 671, 672 [2010]; *Suarez v State of New York*, 193 AD2d 1037, 1038 [1993]). Notably, petitioner "failed to present any new facts or change in the law that would require a different determination" (*Marquis v Washington*, 85 AD3d 1338, 1338 [2011]); rather, petitioner simply attempted to persuade Surrogate's Court to grant him the substantive relief that the court denied him in the first instance. As to the balance of petitioner's motion, we conclude that Surrogate's Court properly denied his request for leave to file an amended accounting.

Spain, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the orders are affirmed, without costs.