*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 1, 2016                    521306
_____

In the Matter of the Estate of
    CHARLOTTE E. JEWETT,
    Deceased.

BETH NILAN,
                    Respondent;

CHARLENE TEDESCO, Individually
    and as Executor of the
    Estate of CHARLOTTE E.
    JEWETT, Deceased,
                    Appellant.

(Proceeding No. 1.)
_____          MEMORANDUM AND ORDER

In the Matter of the Estate of
    CHARLOTTE E. JEWETT,
    Deceased.

CHARLENE TEDESCO, as Executor
    of the Estate of CHARLOTTE
    E. JEWETT, Deceased,
                    Appellant;

BETH NILAN,
                    Respondent.

(Proceeding No. 2.)
_____


Calendar Date:  October 18, 2016

Before:  Peters, P.J., Garry, Devine, Clark and Aarons, JJ.

                    _____


        Tabner, Ryan & Keniry, LLP, Albany (Brian M. Quinn of
counsel), for appellant.

Donohue, Sabo, Varley & Huttner, LLP, Albany (Kenneth G. Varley of counsel), for respondent.

_____

Clark, J.

Appeals (1) from an order of the Surrogate's Court of Albany County (Maney, S.), entered May 12, 2015, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to SCPA 2102, to, among other things, transfer certain properties that had been devised to her by decedent's will, and (2) from an order of said court, entered May 29, 2015, which granted petitioner's application, in proceeding No. 1, for an award of counsel fees.

Charlotte E. Jewett (hereinafter decedent) died testate on January 15, 2012 and was survived by her two daughters, Charlene Tedesco and Beth Nilan. On January 27, 2012, decedent's last will and testament was admitted to probate and letters testamentary were issued to Tedesco as the executor of decedent's estate. Decedent's will specifically devised to Tedesco two parcels of real property in the Town of Colonie, Albany County — namely, 133B Boght Road and 135 Boght Road (hereinafter the Boght Road properties) — and specifically devised to Nilan a condominium in Naples, Florida, the value of decedent's bank accounts and timeshares in Cancun, Mexico and Fort Lauderdale, Florida. The will further provided that any residuary be split equally between Tedesco and Nilan.

In October 2013, after Tedesco had refused to deliver to Nilan possession of the condominium and the Mexico and Florida timeshares, Nilan commenced proceeding No. 1 to, among other things, compel distribution of the timeshares and the condominium. Tedesco answered and asserted a cross claim seeking to stay distribution of the devised property until all of the estate's liabilities had been satisfied. Thereafter, pursuant to court order, Tedesco commenced proceeding No. 2 for judicial settlement of the estate and submitted a final accounting. Nilan filed numerous objections alleging that the accounting omitted

certain property and contained various inaccuracies.

Following a nonjury trial, Surrogate's Court, among other things, determined that Tedesco's accounting included invalid funeral and administration expenses and creditor claims and omitted certain estate property and income, directed Tedesco to deliver to Nilan executed deeds for the condominium and timeshares, imposed upon Tedesco a surcharge in the amount of $74,140.54 and awarded Nilan reasonable counsel fees and costs. Nilan subsequently submitted invoices reflecting that she had incurred $21,946.83 in counsel fees and costs, and Surrogate's Court directed Tedesco to pay that amount in full. Tedesco appeals from the order judicially settling the account, as well as the subsequent order directing payment of Nilan's counsel fees and costs.

## I. The Accounting Generally

Tedesco argues, among other things, that Surrogate's Court erred in rejecting certain creditor claims, concluding that the estate had income remaining and an available residue, imposing a surcharge upon her and awarding Nilan counsel fees and costs. The executor of an estate is primarily charged with settling and distributing the estate of the decedent (see Matter of Kohler, 231 NY 353, 365 [1921]; Matter of Camarda, 63 AD2d 837, 837 [1978]), and it is incumbent upon the executor to maintain "clear and accurate accounts of the estate" (Matter of Camarda, 63 AD2d at 837; see Matter of Carbone, 101 AD3d 866, 869 [2012]; Matter of Mink, 91 AD3d 1061, 1063-1064 [2012]).

In an accounting proceeding, the party submitting the account has the ultimate burden of demonstrating that all the assets of the estate have been fully accounted (see Matter of Tract, 284 AD2d 543, 543 [2001]; Matter of Capaldo, 263 AD2d 910, 912 [1999]; Matter of Schnare, 191 AD2d 859, 860 [1993], lv denied 82 NY2d 653 [1993]). "If left uncontested, the account stands proved pro confesso[,] except in as far as it may be patently contrary to law" (Matter of Curtis, 16 AD3d 725, 726 [2005] [internal quotation marks and citations omitted]). Where the account is contested, the objectant bears the initial burden of proffering evidence to establish that the account is

inaccurate or incomplete, and, upon satisfaction of that burden, the burden shifts to the executor to prove, by a preponderance of the evidence, that the account is accurate and complete (see Matter of Gallagher, 81 AD3d 825, 825 [2011]; Matter of Curtis, 16 AD3d at 726-727; Matter of Robinson, 282 AD2d 607, 607 [2001]; Matter of Schnare, 191 AD2d at 860).  "In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, bearing in mind that in a close case, the trial judge . . . had the advantage of seeing the witnesses and hearing the testimony" (Matter of Albert, 137 AD3d 1266, 1267 [2016] [internal quotation marks and citation omitted], lv denied 27 NY3d 910 [2016]; see Matter of Hunter, 100 AD3d 996, 997-998 [2012], lv dismissed 21 NY3d 1037 [2013], lv denied 22 NY3d 860 [2014]; Matter of Neustein, 97 AD3d 684, 685 [2012], lv denied 20 NY3d 858 [2013]).

At the outset, we note that, as highlighted by Nilan's many successful objections, Tedesco's accounting was markedly deficient.  Nilan demonstrated, among other things, that Tedesco omitted certain principal and income received by the estate, underrepresented the date of death value of decedent's bank account, included improper funeral and administration expenses, while also leaving out valid expenses, and listed numerous invalid creditor claims.  Overall, Tedesco provided incomplete documentation to support her accounting, often leaving alleged expenses and creditor claims unsubstantiated, and her testimony did little to illuminate the unsubstantiated creditor claims and expenses, as she was frequently unable to explain various alleged transactions.  Furthermore, when questioned, Tedesco admitted that certain alleged creditor claims were improper.  Given the utter deficiency of the accounting, coupled with the incomplete supporting documentation and Tedesco's largely unhelpful testimony, "all presumptions are against her and all doubts are to be resolved adversely to her" (Matter of Camarda, 63 AD2d at 837; see Matter of Carbone, 101 AD3d at 869; Matter of Mink, 91 AD3d at 1063-1064).

A primary point of contention in the proceeding was the inclusion in the accounting of expenses and creditor claims relating to real property that was specifically bequeathed to

either Tedesco or Nilan.  Title to real property that is specifically bequeathed vests at the time of a decedent's death, subject to the right of the executor to resort to it for the payment of the administration and funeral expenses and the decedent's debts (see SCPA 1902; Matter of Seviroli, 31 AD3d 452, 454-455 [2006]; Matter of Columbia Trust Co., 186 App Div 377, 380 [1919]; 7-92 Warren's Heaton on Surrogate's Court Practice § 92.05 [1] [2016]).  In addition, "[a] specific legatee or devisee is entitled to the profits produced by the property after the death of the decedent and is also liable for all expenses incurred in operating and maintaining the property thereafter" (Matter of Williams, 71 Misc 2d 243, 247 [Sur Ct, NY County 1972]).

Here, the record, including the few bank statements provided by Tedesco, demonstrates that, from decedent's death in January 2012 through the end of the accounting period, March 1, 2014, Tedesco took immediate possession of the Boght Road properties, made improvements to those properties with funds from decedent's bank account or the estate bank account and collected and personally retained any rental income derived from the properties.  At the same time, however, Tedesco refused to deliver to Nilan title to, and possession of, the Florida and Mexico timeshares and the condominium, claiming that she was entitled to hold them until she was certain that all of the funeral and administration expenses had been paid and all of the estate's debts had been satisfied.  Tedesco paid some expenses relating to the Mexico and Florida timeshares and the condominium with funds from decedent's bank account or the estate bank account, while, other times, she required Nilan to pay the properties' expenses.  Since, as set forth below, it appears that the estate had sufficient principal and income to pay the valid funeral and administration expenses and creditor claims, we conclude that the most equitable resolution would have been for Surrogate's Court to have held Tedesco and Nilan independently responsible for the expenses and carrying charges of their respective specific bequests of real property.  Our determination in this regard results in various modifications to the decree of Surrogate's Court, as set forth in further detail below.  To outline these modifications, and others required upon our review of the record, we address each relevant schedule of the account

in turn.

## II. Schedule A: Principal Received

Beginning with schedule A of the account, because title to specifically bequeathed real property vests at the time of death, subject to the prior right of the executor pursuant to SCPA article 19, Tedesco was not required to account for the Boght Road properties, the condominium or the Mexico and Florida timeshares (see SCPA 1902; Matter of Seviroli, 31 AD3d at 454-455; Matter of Columbia Trust Co., 186 App Div at 380; 7-92 Warren's Heaton on Surrogate's Court Practice § 92.05 [1] [2016]).  However, Tedesco was required, and failed, to account for the value of three vehicles that belonged to decedent and were not specifically devised, namely, a 2007 Lincoln valued at $12,000, a 2005 Mercury valued at $6,000 and a 1996 Ford F150 valued at $600.  While Tedesco asserted that she and decedent jointly held title to these three vehicles, she provided no documentary evidence whatsoever to support this claim. Furthermore, we reject Tedesco's challenge to the valuation of the vehicles, inasmuch as one of the exhibits that she submitted with the account reflected these precise values.  Resolving any doubt adversely to Tedesco (see Matter of Carbone, 101 AD3d at 869; Matter of Mink, 91 AD3d at 1064; Matter of Camarda, 63 AD2d at 837), Surrogate's Court properly concluded that these vehicles, having a total date of death value of $18,600, should have been included in schedule A of the account.[1]

Furthermore, Tedesco incorrectly listed the date of death value of decedent's bank account as $8,078.54.  Notably, Nilan, not Tedesco, submitted the bank statements associated with decedent's bank account from January 2012, the month in which decedent died, through May 2012, when the remaining funds were transferred by Tedesco into the estate bank account.  On January 1, 2012, decedent's bank account had a balance of $37,051.37; $1,020.77 was deposited into the account prior to decedent's

---

[1]  To the extent that Tedesco may no longer be in possession of these vehicles, she is responsible to the estate for the date of death value of each vehicle.

death and $14,594.44 was withdrawn from the account either before decedent's death or pursuant to checks that were written prior to her death. Accordingly, subtracting $14,594.44 (the total amount of withdrawals) from $38,072.14 (the beginning balance of the account, plus the amount of deposits made prior to decedent's death), Surrogate's Court correctly determined that the date of death value of decedent's bank account was $23,477.70. Based on the foregoing errors and omissions, schedule A of the account should have read as follows:

| Description | Date of Death Value |
|---|---|
| Grandview at Las Vegas | $8,000[2] |
| 2007 Lincoln | $12,000 |
| 2005 Mercury | $6,000 |
| 1996 Ford F150 | $600 |
| Personal Items | $1,500 |
| Decedent's Bank Account | $23,477.70 |
| Total: | $51,577.70 |

III. Schedule A-2: Income Collected

In schedule A-2, Tedesco solely listed rental income from the Boght Road properties. Initially, inasmuch as Tedesco was responsible for all expenses and carrying charges related to the Boght Road properties (see Matter of Williams, 71 Misc 2d at 247), she was entitled to all rental income derived therefrom. Tedesco, however, erroneously omitted $9,784.70 in estate income. The May 2012, August 2012 and September 2012 statements for the estate bank account, as well as a notice dated August 20, 2012 from the Internal Revenue Service, irrefutably demonstrate that deposits were made into the account in the amounts of $237.05, $545.65, $8,002 and $1,000.[3] Accordingly, schedule A-2 should

---

[2] We are unpersuaded by Tedesco's challenge to the date of death value of the Las Vegas timeshare since she alleged this valuation in the account.

[3] Tedesco testified that her husband accidently deposited $5,000 into the estate bank account and, as corroborated by the

have reflected the following:

| Date | Description | Income |
|------|-------------|--------|
| 5/22/12 | National Grid | $237.05 |
| 8/13/12 | 21st Century N. Am. Ins. | $545.65 |
| 8/31/12 | IRS Refund | $8,002 |
| 9/19/12 | Unknown Contribution | $1,000 |
| | Total: | $9,784.70 |

### IV. Schedule C: Funeral and Administration Expenses

Turning to schedule C, administration expenses, followed by funeral expenses, are preferred to all other debts and claims against the estate and must be paid first (see SCPA 1811 [1]). "Administration expenses are limited to those expenses that are actually and necessarily incurred in the administration of the estate," including, among other things, expenses incurred in the collection of assets and payment of debts, counsel fees, court fees, appraisal fees and accountants' fees (7-93 Warren's Heaton on Surrogate's Court Practice § 93.04 [1] [2016]; see e.g. EPTL 11-1.1 [b] [22]). Funeral expenses include the "reasonable expense of a funeral, suitable church or other services as an integral part thereof, expense of interment or other disposition of the body, a burial lot and suitable monumental work thereon and a reasonable expenditure for perpetual care of a burial lot of the decedent" (SCPA 103 [22]).

Here, it is apparent from a review of the January 2012 through May 2012 statements for decedent's bank account and the seven months of statements provided for the estate bank account that the administration and funeral expenses listed by Tedesco were both incomplete and inaccurate. First, Tedesco improperly included as administration expenses costs associated with the Boght Road properties, the timeshares and the condominium —

corresponding bank statement, this amount was immediately withdrawn. Accordingly, we did not include this $5,000 deposit as income of the estate.

including water, cable and electricity bills — and omitted proper funeral and administration expenses. It is further apparent, having reviewed each withdrawal from decedent's bank account and the estate bank account in the statements in evidence, that Tedesco routinely used the funds in the bank accounts to pay for expenses related to the specifically-devised properties, for which, as we have already held, Tedesco and Nilan were individually responsible. Thus, exercising our factual review power (see Matter of Albert, 137 AD3d at 1267; Matter of Hunter, 100 AD3d at 997-998; Matter of Neustein, 97 AD3d at 685), the following checks were properly withdrawn from decedent's bank account:

| Check No. | Date | Description | Amount |
|-----------|------|-------------|--------|
| 667 | 1/01/12 | Dave Baker | $500 |
| 668 | 1/19/12 | Deacon Blues | $785 |
| 790 | 1/02/12 | Community Health Care | $3,344 |
| 791 | 1/20/12 | Felthousen Florist | $1,944 |
| 792 | 1/20/12 | Parker Brothers Memorial | $10,405.50 |
| | | Total: | $16,978.50[4] |

The remaining charges to decedent's bank account were improper, as they reflected expenses associated with one of the specifically-devised properties.[5] Accordingly, Tedesco and Nilan are responsible for reimbursing the estate for those expenses that related to their respective specific bequests of real property. Because it is unclear from the record which of these

---

[4] It should be noted that, in Nilan's proposed findings of fact and conclusions of law, she did not contest that these are proper funeral and/or administration expenses.

[5] In particular, these improper charges were: the January 23, 2012, February 21, 2012, March 27, 2012 and April 20, 2012 payments to National Grid; the January 31, 2012, March 27, 2012 and May 1, 2012 payments to FPL; the February 1, 2012, March 1, 2012, April 2, 2012 and May 1, 2012 payments to Pearl Carroll; the April 3, 2012 payment to "21St Century/Pnot. Ded."; and check number 793.

expenses should have been borne by Tedesco and which should have been borne by Nilan, we remit the matter for a determination as to which charges they are each responsible for paying.

With respect to the estate bank account, we have reviewed the bank statements from May 2012 through December 2012 and October 2013 – the only ones provided by Tedesco – and find that the following charges were properly paid by the estate:

| Check No. | Date | Description | Amount |
|---|---|---|---|
| | 5/08/12 | Deluxe/Chk Order | $19.70 |
| 139 | 8/11/12 | Primary Care Physicians | $9.62 |
| 135 | 8/20/12 | East Greenbush Neurology | $19.76 |
| 140 | 8/22/12 | Burdett Orthopedics | $20 |
| 141 | 8/22/12 | Albany Medical College | $20 |
| 142 | 8/22/12 | Samaritan Hospital | $15.83 |
| 143 | 8/22/12 | St. Peter's Hospital | $49.13 |
| | 9/13/12 | NSF Charge | $25 |
| | | Total: | $179.04 |

The remaining expenditures from the estate bank account, as reflected in the statements for May 2012 through December 2012,[6] were improper and, to the extent that they are expenses of the specifically-devised real properties, they must be repaid to the estate by either Tedesco or Nilan, as determined by Surrogate's Court upon remittal.

Because Tedesco only provided the estate bank account statements for May 2012 through December 2012 and October 2013, we are unable to conduct an exhaustive review of the funds expended from that account to determine which additional charges, if any, were proper funeral and/or administration expenses. Therefore, upon remittal, we direct Tedesco to produce the monthly estate bank account statements from January 2013 through September 2013 and November 2013 through April 2014 so that Surrogate's Court can, with the benefit of further submissions

---

[6] There were no deposits or withdrawals reflected in the October 2013 statement.

from the parties, if they so choose, determine which expenditures, if any, were properly paid by the estate as funeral and/or administration expenses and which should be reimbursed by Tedesco and/or Nilan.

## V. Schedule C-1: Unpaid Administration Expenses

In schedule C-1, Tedesco solely listed, as an unpaid administration expense, $2,500 in counsel fees owed to the estate's attorney. Although Tedesco testified at trial that she had not yet paid this fee, she did not submit a retainer agreement or invoice to confirm this alleged charge. Accordingly, we decline to disturb the determination of Surrogate's Court to invalidate this allegedly unpaid administration expense.

## VI. Schedule C-2: Administration, Expenses Chargeable to Income

Each of the 18 alleged expenses listed by Tedesco in schedule C-2, totaling $22,193.12, relate to one of the Boght Road properties or the condominium. As such, none of these expenses was properly included in schedule C-2.

## VII. Schedule D: Creditor's Claims

The majority of alleged creditor claims included by Tedesco on schedule D were invalid and, having reviewed each alleged claim, we find only the following to be proper:

| Date | Description | Amount |
|------|-------------|--------|
| 1/06/12 | Southwest Airlines | $1,275.20 |
| 1/31/12 | St. Basils | $1,800 |
| 1/31/12 | Felthousen's Inc. | $2,052 |
| 2/01/12 | William A. Turchick | $1,500 |
| 2/08/12 | Probate Fee | $655 |
| 7/13/12 | Grethen — Cahrenger Memorials | $458 |
| 11/15/12 | The Grandview of Las Vegas | $174.75 |
| | Total: | $7,914.95 |

The remaining alleged creditor claims, which appear to have been personally paid by Tedesco, are not chargeable to the estate (see generally 7-96 Warren's Heaton on Surrogate's Court Practice § 96.15 [1] [2016]).  Nor is Tedesco entitled to reimbursement by Nilan for these charges, as most relate to the Boght Road properties or were expended for her benefit.  With respect to the expenses that Tedesco incurred in traveling to the Florida condominium and the locksmith charge, such charges were improper because they resulted from Tedesco's efforts to prevent Nilan from taking possession of and renting the condominium that Nilan lawfully took title to at the moment of decedent's death.

## VIII. Summary of the Account

In sum, the account should have listed $51,577.70 in principal on hand and $9,784.70 in income.  In addition, insofar as can be determined from the bank statements included in the record on appeal, $25,072.49 was properly chargeable to the estate as valid expenses and creditor claims.  Upon remittal, Surrogate's Court should determine, following Tedesco's submission of the missing monthly estate bank account statements, whether there were any additional valid funeral and/or administration expenses paid by the estate and the total amount that Tedesco and Nilan must individually pay to the estate as reimbursement for expenses and carrying charges relating to their respective specific bequests of real property.  If, upon remittal, Surrogate's Court determines that the total date of death value of the principal on hand, plus the income of the estate, exceeds the total value of the valid funeral and administration expenses and valid creditor claims, Nilan is entitled to receive the difference, up to $23,477.70 – the date of death value of decedent's bank account, which Nilan was specifically devised.  The remainder of the principal on hand and income, should there be any, is to be evenly split between Tedesco and Nilan, as specifically provided for in decedent's will.

## IX. Surcharges, Counsel Fees and Costs

Tedesco further challenges the surcharges imposed by Surrogate's Court and the award of counsel fees to Nilan. A fiduciary "owe[s] a duty of undivided loyalty to the decedent and ha[s] a duty to preserve the assets that [decedent] entrusted to him [or her]" (Matter of Donner, 82 NY2d 574, 584 [1993]). Generally, "[a] surcharge is warranted where a demonstrated financial loss is suffered as a result of the fiduciary's imprudent conduct" (Matter of Braasch, 140 AD3d 1341, 1343 [2016]; see Matter of Donner, 82 NY2d at 585).

Here, it is evident from the record that Tedesco took a lackadaisical approach to accounting for the assets that were entrusted to her and was completely derelict in fulfilling her duties as the executor of the estate. She actively withheld from Nilan title and possession of the condominium, thereby thwarting Nilan's ability to rent the property and derive rental income therefrom. In fact, as alluded to earlier, Tedesco flew to Florida after having learned from the estate's attorney that Nilan was at the condominium preparing it for rent, caused Nilan and the contractors that Nilan had hired to perform improvements to vacate the premises and thereafter prevented Nilan from accessing the property. Meanwhile, Tedesco allowed herself full access to, and benefit of, the Boght Road properties, deriving rental income from them and largely paying for their expenses with estate funds. Accordingly, Surrogate's Court did not abuse its discretion in surcharging Tedesco $6,000 for lost rental income, $2,892.04 as reimbursement for travel expenses and the cost of materials relating to Nilan's trip to the condominium, $10,000 for the date of death value of the Mexico timeshare, $900 as reimbursement for the membership fee for the Mexico timeshare and $2,000 as reimbursement for the ancillary probate fees incurred by Nilan (see Matter of Donner, 82 NY2d at 585; Matter of Braasch, 140 AD3d at 1342; see generally SCPA 1807 [2]). Tedesco is further surcharged interest from the date of the accounting for the date of death value of decedent's bank account ($23,477.70), or whatever amount Nilan is entitled to after payment of the valid expenses and creditor claims, as set forth in part VIII of this decision and determined by Surrogate's Court upon remittal.

Contrary to the determination of Surrogate's Court, because we have held that Tedesco and Nilan are separately responsible for the expenses and fees associated with their respective real properties, we vacate the surcharge of $6,347.05 for reimbursement of taxes and fees paid by Nilan for the condominium.  We further note that Tedesco is not surcharged for the date of death value of decedent's bank account, as that is to be paid to Nilan from the principal on hand and the income of the estate, after payment of the valid administration and funeral expenses and creditor claims.

Finally, considering the substantial amount of time and effort required to defend against the deficient account submitted by Tedesco, we discern no abuse of discretion in the determination of Surrogate's Court to surcharge Tedesco for the full amount of counsel fees and costs incurred by Nilan (see Matter of Braasch, 140 AD3d at 1342-1343; Matter of Pati, 151 AD2d 1006, 1007 [1989]).  To the extent that any of Tedesco's arguments are not expressly addressed by the foregoing, we have reviewed and rejected such arguments.

Peters, P.J., Garry, Devine and Aarons, JJ., concur.

ORDERED that the order entered May 12, 2015 is modified, on the law, without costs, as specifically set forth herein; matter remitted to the Surrogate's Court of Albany County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ORDERED that the order entered May 29, 2015 is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court