Matter of Estate of Ingber (2025 NY Slip Op 06935)

Matter of Estate of Ingber

2025 NY Slip Op 06935

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

CV-23-1057
[*1]In the Matter of the Estate of Jack S. Ingber, Deceased. Keith Ingber et al., as Coexecutors of the Estate of Jack S. Ingber, Deceased, Appellants; Catskill Hudson Bank, Respondent.

Calendar Date:October 9, 2025

Before:Garry, P.J., Clark, Aarons, Lynch and Powers, JJ.

Keith Ingber, Thompson Ridge, appellant pro se, and for Audrey Inger Bender, appellant.
Marvin N. Newberg, Monticello, for respondent.

Garry, P.J.
Appeals from an order and a decree of the Surrogate's Court of Sullivan County (James Farrell, S.), entered May 15, 2023, which, among other things, granted petitioners' application, in a proceeding pursuant to SCPA article 22, for judicial settlement of the accounting of decedent's estate.
The order before this Court is one judicially settling the final account of the estate of Jack S. Ingber (hereinafter decedent). Evaluating the propriety of that settlement — namely, a surcharge imposed upon counsel for the estate — requires extended background. In 2003, 230-275 Realty, LLC executed a promissory note in favor of respondent. As security for the note, the LLC executed a mortgage encumbering certain commercial property, and decedent, then a managing member of the LLC, later executed a personal guaranty for the LLC's obligation under the note and a commercial pledge agreement granting respondent a security interest in 8,384 of his shares of stock in respondent as additional collateral.[FN1] In 2009, respondent commenced an action in Sullivan County to foreclose the mortgage against the LLC and John Does; decedent was never named as a party in that action. In defense, the LLC set forth various counterclaims generally sounding in fraud, tortious interference with contract and breach of fiduciary duty, all relating to acts by respondent that allegedly deprived the LLC of a commercial tenant and thus the cash flow needed for it to maintain its mortgage payments. In 2011, Supreme Court (Gilpatric, J.) dismissed the LLC's counterclaims and entered a judgment of foreclosure and sale in favor of respondent against the LLC.[FN2] No appeal was taken from that judgment. In 2013, following respondent's purchase of the encumbered property at auction for $50,000, the court determined its fair market value to be $125,000 and accordingly entered a deficiency judgment in favor of respondent and against the LLC in the amount of $250,010.58. Respondent effectuated the pledge agreement thereafter, electing to reacquire decedent's pledged stock as treasury stock and crediting decedent $152,169.60 against his indebtedness — finding $18.15 per share to be the over-the-counter value of the stock at that time.
In 2015, decedent commenced an action in Orange County against respondent, among others, challenging respondent's acquisition of his stock in eight causes of action. As relevant here, those causes of action included one for breach of the pledge agreement for lack of notice of the stock sale (first cause of action), one for deprivation of decedent's alleged right to redeem the stock (second cause of action), and one for breach of fiduciary duty (fourth cause of action). Decedent died in 2016, as a resident of Sullivan County. His two children, petitioners herein, were appointed as coexecutors of his estate pursuant to decedent's last will and testament and were substituted as plaintiffs in the Orange County action. Decedent's wife having predeceased him, petitioners were also [*2]the main beneficiaries of the estate, apart from two nominal charitable bequests. Decedent's son, petitioner Keith Ingber, is also counsel for the estate.[FN3] In 2017, petitioners moved to amend their second amended complaint in the Orange County action to include a ninth cause of action, which sought a declaration that enforcement of the stock pledge agreement was time-barred and an order directing the return of decedent's stock. The parties then cross-moved for summary judgment. In 2018, Supreme Court (Onofry, J.) granted petitioners' motion to amend but also granted respondent's cross-motion for summary judgment dismissing petitioners' third amended complaint in full.
While an appeal from the Orange County order was pending, petitioners commenced this probate proceeding in Sullivan County. Respondent accordingly filed a claim against decedent's estate for the amount then due and owing on the LLC's deficiency judgment ($121,323.06), as well as the remaining balances on three personal loans that decedent received during his lifetime ($87,809.25), for a total of $209,132.31. Petitioners moved to dismiss the claim or, in the alternative, for a stay pending the outcome of the appeal in the Orange County action. In July 2019, Surrogate's Court (LaBuda, S.) found respondent's claim against the estate to be valid and enforceable based upon the documentation submitted and rejected petitioners' efforts to collaterally attack the delinquency judgment and the Orange County order through this probate proceeding. The court nonetheless granted petitioners leave to move for an amended judicial settlement should the Second Department reverse the Orange County order. Petitioners subsequently rejected an offer by respondent to settle respondent's claim against the estate for the value of the personal loan balances in exchange for discontinuance of the Orange County action and mutual releases. In December 2020, this Court upheld respondent's claim against the estate, recognizing that Surrogate's Court would entertain amendment of the accounting if there was a reversal of the order pending appeal before the Second Department (189 AD3d 1933, 1936-1937 [3d Dept 2020]).
In February 2021, the Second Department modified the Orange County order, reversing the grant of summary judgment to respondent as to certain causes of actions (Ingber v Martinez, 191 AD3d 959, 961-962 [2d Dept 2021]). Because hearsay evidence lacking a proper foundation was the only proof offered to establish that respondent conducted the transfer of decedent's stock in accordance with the pledge agreement, the Second Department found that respondent failed to establish prima facie entitlement to summary judgment dismissing petitioners' first and second causes of action (id.). Given the same issue with the proof, the Second Department also reversed the grant of summary judgment dismissing petitioners' ninth cause of action to the extent that it essentially declared that respondent was not obligated to [*3]return the stock to the estate, while rejecting any argument that respondent failed to timely commence an action to enforce the guaranty and stock pledge agreement (id.). The Second Department also reinstated petitioners' fourth cause of action, alleging breach of fiduciary duty based upon the doctrine of collateral estoppel, as decedent/petitioners were not parties to the foreclosure action (id. at 962). At some point after the Second Department's order, petitioners sought to file an amended accounting with Surrogate's Court omitting the amount of the deficiency judgment altogether, urging that, by reinstating petitioners' foregoing claims, the Second Department acknowledged that the statute of limitations had run and that respondent could not be held personally liable under the personal guarantee or the stock pledge agreement as he was never made a party to the foreclosure action. Petitioners subsequently rejected yet another offer by respondent to settle its claim against the estate for the value of the personal loan balances, although they had taken no steps to resume prosecution of what remained of the Orange County action.
In an October 2022 order, Surrogate's Court (Farrell, S.) rejected petitioner's proposed amended accounting, finding that the Second Department's order did not render the deficiency judgment inapplicable against decedent. The court also declined to grant an application by respondent to remove petitioners as coexecutors for, among other conduct, wasting estate assets, but the court did find that the $282,000 in counsel fees then sought by Ingber — eclipsing the value of the estate — were grossly excessive and capped such fees at $75,000, inclusive of certain fees already paid in conjunction with the Orange County action. The court also warned petitioners that certain future dilatory conduct would subject them to removal, possible surcharge and loss of commissions, and ordered that a final accounting be filed within 60 days. Petitioners did not comply with that directive, nor did they comply with Surrogate's Court's subsequent scheduling orders or its directive to sell the remaining stock in respondent still held by the estate (5,852 shares), despite the existence of an offer exceeding petitioners' valuation of same. Ultimately, on January 17, 2023, petitioners advised the court that the estate had accepted an offer from a nonparty to purchase the remaining stock for $26 per share, and a final accounting reflecting that sale was filed on February 6, 2023, although missing supporting documentation. Meanwhile, petitioners again rejected respondent's offer to settle for the value of the three personal loans, citing their probable success in the Orange County action. That action, however, remained stagnant.
In an amended final petition filed in April 2023, petitioners requested that Surrogate's Court approve commissions in the amount of $22,900.48; remaining legal fees in the amount of $60,355.49; administration expenses in the [*4]amount of $31,664.64; paid creditors' claims in the amount of $11,004.60; and unpaid creditors' claims in the amount of $107,971.43.[FN4] In a May 2023 order and decree, Surrogate's Court found the total adjusted principal amount received by the estate to be $247,340.15 and generally approved the administration expenses and commissions sought, save a minor technical reduction. As for the remaining legal fees, the court found that Ingber had acted against the interest of the estate and instead engaged in conduct geared toward frustrating respondent's claim and increasing respondent's counsel fees. The court elected to surcharge Ingber $34,718.96 — the amount that would have been left in the estate after all fees and claims had Ingber accepted respondent's settlement offers — and approved remaining counsel fees in the amount of $25,636.53. Paid creditors' claims were approved, and, finding petitioners to have failed to prosecute the Orange County action in any way for well over two years following the Second Department's order, the court charged the estate with the entire amount of the deficiency judgment ($209,132.31), which would still be only partially satisfied by the estate's remaining cash on hand following the surcharge ($157,247.16). Petitioners appeal from the May 2023 order.
About a year after the order on appeal was entered — more than three years following the Second Department's order — petitioners made some effort to revive the Orange County action, which appears to have coincided with a public announcement by respondent that it would be selling its stock at $40 per share as the result of a merger. In November 2024, Supreme Court (Squirrell, J.) rejected that effort and dismissed the remainder of the Orange County action on the ground of laches. Respondent has advised, and petitioners do not dispute, that no appeal was taken from that order.
Against this backdrop, we see no reason to disturb the surcharge imposed. A fiduciary, such as counsel for an estate, "owe[s] a duty of undivided loyalty to the decedent and ha[s] a duty to preserve the assets that [the decedent] entrusted to them" (Matter of Donner, 82 NY2d 574, 584 [1993]; see Matter of Jewett, 145 AD3d 1114, 1124 [3d Dept 2016]). Where financial loss results from a fiduciary's failure to act with "such diligence and such prudence in the care and management [of the estate], as in general, prudent [persons] of discretion and intelligence in such matters, employ in their own like affairs," a surcharge is warranted (Matter of Donner, 82 NY2d at 585 [internal quotation marks and citations omitted]; see Matter of Shambo, 169 AD3d 1201, 1207 [3d Dept 2019]; Matter of HSBC Bank USA, N.A. [Knox], 98 AD3d 300, 311 [4th Dept 2012], lv dismissed 20 NY3d 1056 [2013]). "No precise formula exists for determining whether the prudent person standard has been violated in a particular situation; rather, the determination depends on an examination of the facts and circumstances of each case" (Matter [*5]of Janes, 90 NY2d 41, 50 [1997] [citations omitted]; see Matter of Blaine, 209 AD3d 1124, 1126 [3d Dept 2022]).
We must first reject petitioners' argument that the surcharge violates the law of the case. The law of the case doctrine, "a judicially crafted policy that expresses the practice of courts generally to refuse to reopen what has been decided," ordinarily "presents itself in two scenarios: (1) when a second court of the same hierarchical jurisdiction becomes involved in the same matter and (2) when a court, on remand, is presented with a ruling from a reviewing court" (Gulf Coast Bank & Trust Co. v Virgil Resort Funding Group, Inc., 201 AD3d 1086, 1088 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 909 [2022]; see Karol v Polsinello, 127 AD3d 1401, 1402 [3d Dept 2015]). Although petitioners are correct that Surrogate's Court capped the amount of legal fees at $75,000 in its October 2022 order, the court did not revisit that sum when it subsequently addressed the separate issue of surcharging Ingber. Nor was Surrogate's Court somehow prohibited from considering a surcharge by its distinct decision not to remove petitioners as coexecutors, and thus frustrate decedent's intent. Additionally, neither the Second Department's order nor any other order required Surrogate's Court to conclude that the deficiency judgment was invalid, such that it would have been improper for the court to consider petitioners' lack of results in the Orange County action in fixing the surcharge.
As for the surcharge itself, the October 2022 order made clear that petitioners' continued efforts in pursuing potential additional estate assets, although not legally frivolous, were not reasonable and not beneficial to the estate. This determination included consideration of the modest size of the estate, the counsel fees already allegedly amassed in excess of estate assets, and the likely insignificance of any potential recovery for the estate's "beneficiaries" when balanced against the further legal fees that would necessarily result. Nevertheless, petitioners continued to frustrate the settlement of respondent's presumptively valid claim against the estate, notably for less than half of that claimed, by insisting that there was merit to the Orange County action — an action that they were making no efforts to pursue. The October 2022 order also warned petitioners to timely comply with court directions moving forward or risk surcharge, among other penalties. Petitioners failed to comply, instead filing repeated interim accountings that were incorrect, incomplete or otherwise deficient, necessitating additional opposition from respondent, more appearances and the amassing of yet further legal fees. Given the substantial amount of time and effort required to defend against the Orange County action, petitioners' ultimate failure to prosecute same, and the resultant delays and expenses incurred in this proceeding, we discern no abuse of discretion [*6]in the determination of Surrogate's Court to surcharge Ingber "in an amount aimed at placing respondent in the position that it would have been in had [Ingber] fulfilled h[is] fiduciary duty" to preserve estate assets and prudently settle the estate within a reasonable amount of time (Matter of Shambo, 169 AD3d at 1207; see Matter of Jewett, 145 AD3d at 1124; Matter of Scott, 234 AD2d 551, 551-552 [2d Dept 1996]).
Any further challenge to that part of the May 2023 order charging the estate with the balance of the deficiency judgment in light of petitioners' failure to timely prosecute the Orange County action has been rendered moot by the dismissal of that action (see Stefanik v Hochul, 229 AD3d 79, 82 n 3 [3d Dept 2024], affd 43 NY3d 49 [2024]). Any claims of judicial bias are unpreserved for this Court's review in the absence of an objection by petitioners on that basis or a motion for Surrogate's Court to recuse itself (see Whitfield v Law Enforcement Empls. Benevolent Assn., 237 AD3d 1139, 1143 [2d Dept 2025]; Theodore P. v Debra P., 209 AD3d 1146, 1147 [3d Dept 2022]). Petitioners' remaining contentions, to the extent not expressly addressed herein, have been examined and determined to be without merit.
Clark, Aarons, Lynch and Powers, JJ., concur.
ORDERED that the order and the decree are affirmed, with costs.

Footnotes

Footnote 1: Decedent was involved in the formation of respondent and served as chairperson of and counsel for respondent prior to retiring.
Footnote 2: Supreme Court also dismissed the LLC's related third-party action against an officer of respondent principally charged with the alleged bad acts.

Footnote 3: Ingber is not himself the attorney of record in the Orange County action, but he has fashioned an arrangement with lead counsel to prepare all papers therein.

Footnote 4: Petitioners abandoned their "Office" claim, in the amount of $30,162.18, in their final accounting, notably after Surrogate's Court had directed submission of proof to substantiate the claim.