Matter of Wojcik (2024 NY Slip Op 51710(U))

[*1]

Matter of Wojcik

2024 NY Slip Op 51710(U)

Decided on December 16, 2024

Surrogate's Court, Broome County

Guy, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 16, 2024
Surrogate's Court, Broome County

In the Matter of the Estate of Frances C. Wojcik, Deceased.
Kenneth Wojcik, Executor of the Estate of Frances C. Wojcik, Deceased, Petitioner,
against
Eileen Palmisano, Respondent.

File No. 2023-128/A

Daniel R. Norton, Esq.
Hinman, Howard & Kattell, LLP
Attorneys for Petitioner
80 Exchange Street
Binghamton, NY 13902-5250
Cynthia Ann K. Manchester, Esq.
Levene, Gouldin & Thompson, LLP
Attorney for Respondent
450 Plaza Drive
Vestal, NY 13850

David H. Guy, S.

PROCEDURAL HISTORY
Frances C. Wojcik (Decedent) died a resident of Broome County on January 6, 2023. Kenneth Wojcik (Petitioner), Eileen Palmisano (Respondent), and Diane Langton are Decedent's [*2]surviving children. Decedent left a Last Will and Testament dated August 13, 1996. On February 14, 2023, the Court admitted the Last Will and Testament of Frances C. Wojcik to probate and issued Letters Testamentary to Petitioner. The Will devises Decedent's residuary estate to his three surviving children in equal shares.
On May 1, 2023, Petitioner filed a filed a petition pursuant to SCPA 2103 for turnover of property allegedly withheld by Respondent. The petition alleges that Decedent owned a bank account on which Respondent was added as a joint owner. The petition alleges the addition of Respondent on the bank account was for convenience, and the Petitioner asks the Court to direct Respondent to deliver the money in the bank account to the Decedent's estate. The petition also asks that Respondent be assessed the legal fees, costs, and disbursements associated with the turnover proceeding. The petition is supported by two exhibits.
A citation issued on the turnover petition on May 3, 2023. All necessary parties were served with the citation.
Due to the appearance of Daniel R. Norton, Esq. from Hinman, Howard & Kattell, LLP, for which the undersigned has a standing conflict, the Court issued a recusal letter on June 7, 2023. Remittals were signed by Petitioner, Respondent, their respective counsel, and Ms. Langton, and the case remains assigned to the undersigned.
On June 16, 2023, Respondent filed an answer, denying the allegations and asserting Decedent purposefully established the subject bank account with a right of survivorship in the remaining funds in the account to Respondent. The answer requests the Court dismiss the petition and award attorney's fees, costs, and disbursements for this proceeding in favor of Respondent.
The Court issued a scheduling order dated December 22, 2023, setting a discovery deadline of March 1, 2024. By order dated May 28, 2024, the Court set the deadline for the filing of dispositive motions by June 28, 2024.
On June 20, 2024, Cynthia Ann K. Manchester, Esq., on behalf of Respondent, filed a motion for summary judgment, supported by an attorney affidavit with six exhibits; a memorandum of law; and an affidavit by Respondent.[FN1]
Respondent's motion was returnable on July 24, 2024. On July 16, 2024, Mr. Norton filed an affirmation in opposition to Respondent's summary judgment motion and a memorandum of law. The same day Ms. Manchester filed an affidavit in reply to Petitioner's responding papers.
On June 27, 2024, Mr. Norton, on behalf Petitioner, filed a cross-motion for summary judgment, supported by an attorney affirmation with eight exhibits and a memorandum of law. Petitioner's summary judgment motion was also made returnable on July 24, 2024. On July 15, 2024, Ms. Manchester filed the following in opposition to Petitioner's summary judgment motion: an affidavit of Respondent; a responding attorney affidavit; and a reply memorandum of law. On July 23, 024, Mr. Norton filed a reply affirmation.
Both summary judgment motions are now fully submitted, and this decision follows.

FACTUAL BACKGROUND
The material facts are not in dispute, though their import is. The following recitation is of [*3]the documented and undisputed facts.
Decedent's spouse died on December 29, 1980. Before his death, Decedent and her spouse had a joint bank [FN2]
account at the IBM credit union, and that account passed to Decedent upon her spouse's death.
On January 19, 1981, Decedent established a joint bank account (with account number ending in 20-1; also identified as Book No. 23969) with Respondent at the IBM Endicott Employees Federal Credit Union, whose ultimate successor is Visions Federal Credit Union ("Visions"). Visions currently maintains the bank account at issue. Respondent testified at deposition that she and her mother went to the bank to open the account based on Decedent's desire to do so. Decedent and Respondent met with a bank representative. A Joint Share Account Agreement form ("1981 Agreement") was filled out and signed by both Decedent and Respondent. Respondent watched Decedent read the terms of the 1981 Agreement before signing the card. Respondent does not recall Decedent asking any specific questions about the 1981 Agreement.
The 1981 Agreement contains the names of Frances C. Wojcik and Eileen Wojcik (Respondent's maiden name), as well as their signatures. An identical copy of this document was obtained and presented as an exhibit to the Court by each of Petitioner and Respondent in connection with these motions. On its face, the 1981 Agreement indicates there is a "reverse side of this form." The exhibit is two pages: the first page, titled "JOINT SHARE ACCOUNT AGREEMENT," bears the signatures of Respondent and Decedent and includes language that the parties "agree to the terms and conditions on the reverse side of this form." The second page of the exhibit contains the following language:
The joint owners of this account, hereby agree with each other and with said Credit Union that all sums now paid in on shares, or heretofore or hereafter paid in on shares by any or all of said joint owners to their credit as such joint owners with all accumulations thereon, are and shall be owned by the jointly with the right of survivorship and be subject to the withdrawal or receipt of any of them, and payment to any of them or the survivor or survivors shall be valid. . ."
Respondent does not remember whether the words on the copy of the 1981 Agreement produced by Visions in connection with this proceeding match those on the document she and Decedent signed in 1981. Respondent also does not remember whether the bank representative said anything about the terms and conditions at the time of signing.
On January 20, 1987, Decedent and Respondent executed a new, one-page single sided Membership Signature Form at the IBM Endicott/Owego Employees Federal Credit Union, successor to IBM Endicott Employees Federal Credit Union ("1987 Agreement"). Handwritten on the 1987 Agreement is "old # [redacted]-01," "Wojcik, Frances," and "Bk #23969," the same book number referenced on the 1981 Agreement. The "joint account" box is checked and both [*4]Decedent's and Respondent's typed names and signatures are present.[FN3]
Respondent again does not recall Decedent asking any questions about or discussing the 1987 Agreement when it was executed. Respondent recalls the bank representative explaining the document but does not remember the specific conversation.
The 1987 Agreement contains joint ownership and survivorship language virtually identical to that on page two of the exhibit submitted as the 1981 Agreement. Both the 1987 Agreement and page two of the 1981 Agreement exhibit include language allowing Decedent, as the member of the credit union, to unilaterally remove Respondent as joint owner. The same language is in both forms. Decedent's name is handwritten in the blank for the member's name on this section of the 1987 Agreement, while the blank is not filled in on the 1981 form; Decedent was in fact the member.
Petitioner has always lived with his parents. Respondent was also living at home when the 1981 Agreement was executed, but no longer was when the 1987 Agreement was executed.
In 1993, IBM Endicott Employees Federal Credit Union became Visions, where Decedent maintained the subject account until she died on January 6, 2023.
Respondent did not deposit any of her own funds to the account and never claimed interest generated in the account on her personal income taxes. Decedent retained the checkbook to the accounts; Respondent never possessed a physical checkbook. Respondent did not receive statements for the account. Respondent never made a withdrawal from the account for her own benefit. Decedent made the decisions how the funds in the account were used and managed.
Respondent helped Decedent more directly with her banking after Decedent had a stroke around August 2017, until Decedent's death in January 2023. Respondent took over Decedent's bill payment and would make cash withdrawals at Decedent's direction. Respondent sometimes would have Decedent endorse a check made out to Decedent and would deposit the check for Decedent.
Decedent's Last Will and Testament, executed on August 13, 1996, leaves Decedent's home and all her personal property, including her automobile, to Petitioner and then divides the residuary estate equally among her three children, Petitioner, Respondent and Diane Langton. Petitioner was named executor and Letters Testamentary were issued to him on February 14, 2023. The residuary estate consists of a Morgan Stanley account valued at approximately $157,000 as of Decedent's date of death, and some shares of IBM stock valued at approximately $3,000. Decedent named Petitioner as beneficiary of an annuity in the amount of $66,000. Decedent's other daughter was named by Decedent as beneficiary of a small life insurance policy.
Following Decedent's death, Petitioner requested that the balance of the Visions account be paid to the estate, leading to the pending petition and cross-petition. As of the date of Decedent's death, the balance in the Visions account was $587,051.23. Respondent has not spent or removed any funds from this account, due to the pending petitions. Respondent's assertion, supported by Petitioner's deposition testimony and not disputed, is that Petitioner is not aware of any witnesses to support his assertion that Decedent did not intend for Respondent to receive the proceeds of the Vision account upon her death.

DISCUSSION

I. Standard for Summary Judgment
It is well-settled that on a motion for summary judgment, the moving party must present evidentiary facts that establish that party's right to judgment as a matter of law, while the opposing party must present evidentiary proof in admissible form that demonstrates the existence of a factual issue. Alvarez v Prospect Hosp., 68 NY2d 320, 324 (1986). Moreover, the court must accept the non-moving party's evidence as true and grant them every favorable inference. Hourigan v McGarry, 106 AD2d 845 (3d Dept 1984), lv dismissed 65 NY2d 637 (1985). An application for summary judgment should be denied ". . . if there is any doubt, at least any significant doubt, whether there is a material triable issue of fact." Phillips v Joseph Kantor & Co., 31 NY2d 307, 311 (1972).
Banking Law § 675 (a) provides, in relevant part, as follows:
When a deposit of cash . . . has been made . . . in the name of [the] depositor . . . and another person and in form to be paid or delivered to either, or the survivor of them, such deposit . . . and any additions thereto made, by either of such persons . . . shall become the property of such persons as joint tenants . . . and may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them.
Where an account has been formed in compliance with the statute, it is presumed, absent a showing of fraud or undue influence, that the depositors intended to create a joint tenancy with rights of survivorship. See Banking Law § 675 (b); In re Estate of Stalter, 270 AD2d 594, 595-596 (3d Dept 2000); Matter of Camarda, 63 AD2d 837, 838 (4th Dept 1978). For the statutory presumption to be triggered, however, the "survivorship" language must appear on the signature card or ledger for the subject account. Matter of Najjar (Sanzone), 195 AD3d 1483, 1485 (4th Dept 2021); Stalter, supra at 595.
Absent the necessary survivorship language, the statutory presumption contained in Banking Law § 675 does not apply, even if the documents creating the account provide that it is a "joint" account. Matter of Najjar (Sanzone), supra at 1485; Matter of Coon, 148 AD2d 906, 907 (3d Dept 1989).
If such language indeed is present, the presumption is triggered and the burden then shifts to the party challenging the title of the survivor to either establish fraud, undue influence or lack of capacity, or "direct proof or substantial circumstantial proof, clear and convincing and sufficient to support an inference that the joint account had been opened in that form as a matter of convenience only." Stalter, supra at 595-96 (citing Matter of Coddington, 56 AD2d 697, 698; Sperrazza v Kail, 267 AD2d 692, 694; Matter of Mullen v Linnane, 218 AD2d 50, 54; Matter of Harrison, 184 AD2d 42, 45; Matterof Camarda, supra); Estate of Grancaric, 91 AD3d 1104 (3d Dept 2012); Matter of Corcoran, 63 AD3d 93 (3d Dept 2009).
The exhibit produced as the 1981 Agreement is presented on two pages. The second of those two pages includes the necessary survivorship language triggering the statutory presumption that Decedent intended to create joint and survivorship account with Respondent. Stalter, supra; Najjar (Sanzone), supra; Coon, supra. Petitioner argues that the fact the produced document is not a single, two-sided page should prevent the application of the statutory presumption. Petitioner has provided no supporting case law, nor has he offered anything that raises a substantial or "material triable issue of fact" on this issue. Phillips, supra.
This argument also flies in the face of both practicality and common sense. The original [*5]version of the 1981 Agreement was not produced by Visions, and in all likelihood no longer exists. In our world of electronic document storage, virtually all entities which need to retain old paper records scan and electronically store them. When subpoenaed or otherwise needed, the stored electronic records are retrieved and produced, electronically or on paper. The legal determination of what a document consisted of cannot be a function of how it is reproduced on paper from electronic storage. Visions might have generated this record on a single, two-sided page. Indeed, many entities utilize two-sided copies to responsibly save paper. Many originally paper records are produced for litigation in electronic format and are never generated physically.
The 1981 Agreement is clear on its face. The first page references the "reverse side." Its original paper edges are visible on the copy, revealing it to be roughly half the size of a full page, typical of a bank account signature card made to be stored in a bank card file. Petitioner's argument is rejected, and the Court can only conclude that there is no material issue of fact the 1981 Agreement was a card printed front and back. The necessary survivorship language being present on the card, the statutory presumption applies. Banking Law § 675 (b); Stalter, supra at 595-596; Camarda, supra at 838; compare In re Estate of Coon, 148 AD2d 906, 907-908 (3d Dept 1989) (statutory presumption does not apply to joint account when signature card creating account only had "j" circled and no language of survivorship on the card); Najjar (Sanzone), supra at 1485 (proponent failed to submit signature cards or ledgers of the accounts that included the required survivorship language).
A contrary result on this issue raised by Petitioner would lead to even more proceedings on joint bank accounts, already the subject of substantial litigation. Whether the parties or the Court agree with the appropriateness of the statutory presumption, it is the law until changed by the legislature. Implemented to provide clarity and reduce litigation, the Court is loath to apply it in a way that produces the opposite result. 
It is evident and not disputed that the 1987 Agreement reflects a conversion or update of the original 1981 account. That agreement contains virtually the same language as the 1981 Agreement, similarly satisfying the standard of the statutory presumption, reaffirming its application to the account as it existed at Decedent's death.
With the application of the presumption, the burden shifts to Petitioner to prove that the account designation to include Respondent was created for Decedent's convenience and not as a true joint account. Banking Law § 675 (b); Stalter, supra at 595-6; Matter of Camarda, supra at 838.
It is incumbent on Petitioner to put forth clear and convincing proof to rebut the presumption that the account was truly joint in nature, and instead operated as a convenience account for the decedent. Stalter, supra at 595-6. The presumption is not automatically rebutted where, as here, the depositor/decedent had exclusive possession of the passbooks, the survivor made no deposits or withdrawals during his lifetime, and the sole source of the funds was the decedent. In re Ricci, 18 AD3d 663, 664 (2d Dept 2005).
One factor in determining whether a bank account is opened as a matter of convenience or as a joint account is the conduct and statements of a surviving cotenant. Matter of Corcoran, supra at 97 (citing Comarda, supra). Here, the undisputed conduct and statements of Respondent are consistent with Ricci and other cases finding the presumption not rebutted.
As noted by Petitioner, the key factor is the intention of the creator of the account at the [*6]time the account is created. Stalter, supra, at 596; Merrill Lynch, Pierce Fenner & Smith Incorporated v. Sohmer, 2019 WL 1441126 at 8 (EDNY, 2019) (internal citation omitted). Here, the creation of the account at issue occurred more than 40 years before Decedent's passing. Petitioner has offered no direct evidence regarding Decedent's intent at the time of the creation of the account which is inconsistent with an intention to establish joint ownership. Mere conclusory and self-serving allegations are insufficient to rebut the presumption. Signature Bank v. HSBC Bank, 67 AD3d 917, 919 (2d Dept. 2009); In re Grodetsky, 495 B.R. 223 (EDNY 2012).
Decedent clearly had experience with the survivorship rights of a co-owner of a joint account. The account she held with her late husband, from which she received the funds used to establish the account at issue here, a month prior to its creation in 1981, was just such an account. The account and its signature cards were renewed or re-executed in 1987, at which time Decedent had the opportunity to restructure the account if she had an intention other than to create a joint tenancy. Stalter, supra at 595-596.
The Decedent's overall estate plan was not equal distribution among her three children. In addition to the bank account at issue here, Decedent named Petitioner as the beneficiary of an annuity of significant value and her third child as beneficiary of a life insurance policy. Decedent's will also specifically devised her house and contents, as well as her vehicle, to Petitioner. The account at issue here was not an anomalous transaction in an otherwise uniformly equal plan of distribution. See, e.g., Matter of Vincent T. (Gloria B.) v Virginia G., 47 Misc 3d 1201(A), *6 (Sur Ct, Broome County 2012) (questioned joint accounts were inconsistent with decedent's testamentary plan, as expressed in her will and other joint accounts); see also Shannon v Zaffiro, 2014 NYLJ LEXIS 5397, *12 (Sur Ct, Kings County 2014); compare Corcoran, supra at 97 (will and inconsistent joint account created within 3 months of each other).
The Court also rejects the argument made by Petitioner that the unilateral right to remove a joint owner, which was in fact in both the 1981 and 1987 Agreements executed by Decedent and Respondent, is fundamentally inconsistent with intent to create joint tenancy with equal rights/ownership. The joint ownership language also in both agreements gives either owner the right to withdraw the full amount of the account, which is effectively a unilateral termination of the joint tenancy. Giving Decedent, the member of the credit union and the creator of the account, the right to remove the co-tenant simply facilitates the result she already had the right to do, without requiring her to close the account to accomplish it. The cases cited by Petitioner do not support of this proposition. Neither Matter of Yaros, 90 AD3d 1063, 1064 (2d Dept 2011), nor Matter of Zecca, 152 AD2d 803 (3d Dept 1989) reference any unilateral right by the creator of the account to remove the co-tenant. The account form language the courts in both Yaros and Zecco found to be a factor in rebutting the statutory presumption required both co-tenants to sign for withdrawals (Id.). The joint ownership language applicable to the account in this case allows either cotenant to make any withdrawals, without limitation.
All arguments advanced by Petitioner and not specifically addressed here have been considered and found unavailing. On the record before the Court on these motions, the Court finds Petitioner has not offered evidence sufficient to rebut the presumption of the creation of a joint account with the right of survivorship. For the reasons set forth above the Respondent's motion to dismiss the turnover petition is granted and the Petitioner's cross-motion to direct the turnover of the joint account held with Respondent is denied.
This Decision constitutes the Order of the Court.
Dated: December 16, 2024
Hon. David H. Guy
Surrogate

Footnotes

Footnote 1:Respondent's affidavit filed June 20, 2024, was not notarized. The notarized version of the affidavit was filed July 16, 2024.

Footnote 2:The financial institution which holds the account at issue here is a credit union, not a bank. The account is formally designated as a "share account," but colloquially and in this decision referred to as a bank account. The statutory and case law is equally applicable.

Footnote 3:Respondent is identified by her now married name.